07-2171-cv
Sussman v Crawford

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2006

(Argued: May 23, 2007)                                   Decided: May 25, 2007)

Docket No. 07-2171-cv

MICHAEL H. SUSSMAN, BENNET WEISS, MAURY KNIGHT AND DEMOCRATIC ALLIANCE OF ORANGE
COUNTY,

       *Plaintiffs-Appellants*,

       -v.-

BRIAN A. CRAWFORD, GARRISON COMMANDER AND UNITED STATES MILITARY ACADEMY AT WEST
POINT,

       *Defendants-Appellees*.

Before: WALKER, CABRANES, *Circuit Judges,* and GOLDBERG[1], *Judge.*

Plaintiffs move for a stay of an order and judgment of the District Court denying their request for a preliminary injunction compelling defendants to allow a political demonstration inside the gates of the United States Military Academy at West Point during a graduation ceremony at which the Vice President of the United States will deliver a commencement address. Plaintiffs claim that the First Amendment affords them a right to protest within the gates of West Point and during graduation exercises.

Motion is denied.

STEPHEN BERGSTEIN, Bergstein & Ullrich, LLP,
Chester, NY, *for Plaintiffs-Appellants*.

JEANETTE A. VARGAS, Assistant United States
Attorney, (Michael J. Garcia, United States
Attorney, and Neil M. Corwin and Mara E.

---

[1] The Honorable Richard W. Goldberg, Judge of the United States Court of International Trade, sitting by designation.

Trager, Assistant United States Attorneys, *on the brief*), United States Attorney's Office for the Southern District of New York, New York, NY, *for Defendants-Appellees.*

Per Curiam:

Plaintiffs move to stay a May 18, 2007 order of the United States District Court for the Southern District of New York (Charles L. Brieant, *Judge*) denying their request for a preliminary injunction. The injunction sought by plaintiffs would compel the United States Military Academy at West Point and its Garrison Commander, Colonel Brian Crawford ("Crawford"), to allow a demonstration by approximately 1,000 protestors to be held inside the gates of West Point during a graduation ceremony at which the Vice President of the United States will deliver a commencement address. Although plaintiffs have been granted permission to conduct their protest immediately outside the gates of West Point, they claim that the First Amendment affords them a right to protest within the gates, in an area known as the Cantonment. As explained below, the First Amendment affords plaintiffs no such right, and their motion is therefore denied.

## I. Background

We recount below the relevant facts as presented by the District Court in its May 18, 2007 order:

Plaintiffs are a political organization and three individuals who oppose the policies of President George W. Bush, including but not limited to the ongoing military conflict in Iraq. Defendant Crawford is the Garrison Commander at the West Point Military Reservation ("the Reservation" or "West Point"), where Army officers have been trained since 1802. Crawford is the official authorized to receive written requests from persons desiring to protest or engage in demonstrations on the Reservation, pursuant to Section 1-2g of United States Military Academy Regulation 27-2, which was adopted on May 5, 2004.

As contemplated by Regulation 27-2, plaintiffs submitted a written request dated April 16, 2007 and signed by plaintiff Michael H. Sussman ("Sussman"), to stage a protest march within the West Point Cantonment on May 26, 2007, the date of West Point's graduation ceremony. The stated purpose of the march is to demonstrate against the continued "American invasion of Iraq." On that date, Vice President Richard B. Cheney is scheduled to address the graduating cadets. Plaintiffs contend the Vice President will use the commencement address as a forum from which to deliver a political speech in support of the ongoing military conflict in Iraq.

Beginning in May 2004, plaintiffs have annually sponsored and conducted a march of approximately 1,000 protestors entirely outside the West Point Reservation, near the Thayer Gate, followed by a rally at Veteran's Memorial Park in the Village of Highland Falls, New York, less than one mile from the Thayer Gate. These activities required no permit from defendants.

West Point is a federal military installation which is the location of an academic institution that educates military cadets over a four-year course to become officers and future leaders in the United States Army. The West Point Reservation consists of approximately 16,000 acres, primarily on the west shore of the Hudson River. A smaller portion of the Reservation, referred to as the Cantonment, contains the campus of the Academy, the supporting facilities, cadet residence, academic halls, administrative offices, the workplace of military and civilian personnel, as well as a football field where the commencement exercises and the Vice President's speech are scheduled to take place. This area is accessible only by three gates—Thayer Gate, Stony Lonesome Gate, and Washington Gate—which are part of a security perimeter that is manned by security personnel at all times. Members of the public are not allowed to enter the Cantonment without permission, but must state a legitimate purpose, present photographic identification which is subjected to a computer search, and allow an inspection of their vehicle.

According to testimony presented before the District Court, if their demonstration were

3

permitted, plaintiffs would assemble at Veterans' Memorial Park at 8:30 AM on May 26, 2007, with approximately 1,000 other participants. The protestors plan to proceed through Thayer Gate after individually presenting identification to the security guards. The protestors would then proceed around a large field located in the West Point Cantonment and exit back through Thayer Gate and off the Cantonment and, eventually, the Reservation. Plaintiffs estimate that they would be within the gates for one hour while commencement ceremonies are going forward. They claimed before the District Court that they would "provide security through designated marshals trained in crowd control and non-violent demonstration tactics." They claimed also that the demonstration would be orderly and would not disrupt the graduation ceremonies. The location of the planned demonstration would place the protestors approximately three quarters of a mile east of the graduation itself.

By a letter dated May 14, 2007, Garrison Commander Crawford denied plaintiffs' request to carry out the planned demonstration, stating:

> West Point has never permitted protests or demonstrations of any type inside the gates of the installation. As a military installation, West Point exists to fulfill a specific military mission. Permitting protests or demonstrations inside the gates of the installation is inconsistent with the military mission and can detract from the good order, discipline, security, morale, or loyalty of the Soldiers who are assigned to or work at the installation.
>
> \*        \*        \*        \*
>
> It is my specific mission on May 26, 2007 to ensure that graduation events, including the arrival and departure of the [Vice President] and his party, as well as the family members and friends of graduating Cadets, are accomplished in an orderly manner. I have determined that there is no safe way for up to 1,000 people to assemble in any area on the military reservation on May 26, 2007 to protest the appearance of the Vice President of the United States at the graduation ceremony that morning without compromising the safety of our residents, our graduation visitors, and the protestors themselves.

On May 15, 2007, plaintiffs initiated the instant action in the United States District Court for the Southern District of New York. Plaintiffs' complaint alleged that Crawford's response to their request to hold the planned demonstration during commencement exercises violated the First Amendment; plaintiffs sought a preliminary injunction compelling defendants to allow their planned

4

demonstration on the West Point Cantonment to go forward.

On May 18, 2007, the District Court entered an order and judgment denying plaintiffs' request for a preliminary injunction. The District Court concluded, in particular, that a preliminary injunction was not warranted because (1) defendants' decision to deny permission for the planned protest was grounded in legitimate security concerns which were "reasonable" and "entitled to judicial deference"; and (2) defendants' "content neutral regulation," which "provides for permitting demonstrations outside of the Gates [of the Cantonment] but not inside," did not violate the First Amendment in the circumstances presented.

Plaintiffs timely appealed the District Court's judgment. On appeal, they raise substantially the same arguments as they raised before the District Court—namely, that (1) the "blanket prohibition" against speech within the West Point Cantonment violates the First Amendment's guarantee of freedom of speech; and (2) the record does not support the District Court's finding that legitimate security concerns outweigh plaintiffs' First Amendment rights to free speech.

## II. Discussion

### A. Standard of Review

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). Any party seeking a preliminary injunction "must demonstrate that it will suffer irreparable harm in the absence of the requested relief." *Latino Officers Ass'n v. Safir*, 170 F.3d 167, 171 (2d Cir. 1999).

"[W]hen, as here, the moving party seeks a preliminary injunction that will affect government action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard." *Wright v. Giuliani*, 230 F.3d 543, 547 (2d Cir. 2000) (internal quotation marks omitted); *see also Beal v. Stern*, 184

F.3d 117, 122-23 (2d Cir. 1999). That is, plaintiffs "must establish a clear or substantial likelihood of success on the merits." *Tunick v. Safir*, 209 F.3d 67, 70 (2d Cir. 2000).

**B. Analysis**

We conclude that plaintiffs have not met their burden of showing a "clear or substantial likelihood" that they will succeed on the merits of their First Amendment claim. *Id.* We reach this conclusion for two reasons.

First, plaintiffs misunderstand the scope of the First Amendment's protections as applied to individuals seeking to engage in political protests within the confines of a military installation. Plaintiffs do not contend that the West Point Cantonment, the venue where they seek to carry out their protest, is a "public forum," or even a "designated public forum," in which a heightened level of First Amendment protections would apply. *See, e.g.*, *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983); *Make the Road by Walking, Inc. v. Turner*, 378 F.3d 133, 142 (2d Cir. 2004). Rather, plaintiffs conceded both before the District Court and before this Court that the West Point campus is a "non-public forum" in which restrictions on speech are permissible "as long as [they are] reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry*, 460 U.S. at 46. Indeed, the Supreme Court has specifically held that military bases are not public forums. *Greer v. Spock*, 424 U.S. 828, 839 (1976); *see also United States v. Albertini*, 472 U.S. 675, 684-86 (1985) (military base "is ordinarily not a public forum for First Amendment purposes even if it is open to the public"). The Supreme Court in *Greer* held that political candidates for national office had "no generalized constitutional right to make political speeches or distribute leaflets at Fort Dix," a military base. *Greer*, 424 U.S. at 838. The Court further held that regulations barring candidates from conducting political activity on the premises of the base did not violate the First Amendment. *Id.* The Court noted, in particular, that "the notion that federal military reservations, like municipal streets and

6

parks, have traditionally served as a place for free public assembly and communication of thoughts by private citizens is . . . historically and constitutionally false." *Id.*

We conclude that the holding of *Greer* is fully applicable where, as here, plaintiffs challenge what they describe as a "blanket policy" of prohibiting all protests within the confines of the West Point Cantonment. *See id.* at 839 (noting that the policy prohibiting political activity on military property was "a considered [military] policy, objectively and evenhandedly applied, of keeping military activities . . . wholly free of entanglement with partisan political campaigns of any kind"). Plaintiffs admit that no other groups have been granted permission to demonstrate at this year's graduation, and do not dispute that no such groups have *ever* been granted permission to demonstrate at *any* past graduation. Defendants' policy of excluding protestors is therefore content-neutral and does not implicate the type of discriminatory censorship that the First Amendment seeks to prevent. *See id.* at 838-39 (noting that "there is no claim that the military authorities discriminated in any way [when implementing the policy]," and further noting that "no candidate of any political stripe had ever been permitted to campaign there").[2]

Plaintiffs' argument that the planned address of the Vice President affords them a right to express their political opinions within the confines of the West Point Cantonment is without merit. Although the Vice President is a political figure, he is also an incumbent official in the United States Government, second in rank only to the Commander-in-Chief. As such, his mere presence on campus

_____

[2]We reject plaintiffs' argument that the relevant United States Military Academy Regulations authorize the Garrison Commander to permit demonstrations within the West Point Cantonment. Those regulations provide, in pertinent part:

> In appropriate cases, the Garrison Commander . . . may give express written permission for demonstrations or activity on the West Point Military Reservation property *outside the gates* adjacent to the installation borders, only if the procedures below are followed."U.S.M.A. Reg 27-2(f) (emphasis added).

The subsequent sections of the regulation, on which plaintiffs rely to suggest that additional authority exists to authorize protests within the campus gates, clearly fall under the purview of the "procedures below" and therefore do not support plaintiffs' argument.

to address members of the United States military on their graduation day does not convert the West Point campus into a public forum; nor does it serve as an open invitation for 1,000 or more outsiders to engage in freewheeling and potentially distracting (if not disruptive) acts of political expression. *Cf. id.* n.10 ("The fact that . . . speakers and entertainers had sometimes been invited to appear at [a military base] did not of itself serve to convert [the base] into a public forum or to confer upon political candidates a . . . right to conduct their campaigns there. . . . [Nor did it] leave authorities powerless thereafter to prevent any civilian from entering [the base] to speak on any subject whatever.").

Accordingly, plaintiffs have not shown a clear or substantial likelihood of success on the merits of their First Amendment claims.

Second, we deem plaintiffs' arguments in favor of a preliminary injunction to be without merit for another, independent reason—namely, the District Court properly concluded that legitimate security concerns were implicated by the potential admission of 1,000 protestors to a military installation during a visit by the Vice President of the United States. We believe that defendants' concerns in this regard are grounded in the real possibility that, despite plaintiffs' assurances of a peaceful and orderly protest, the protest and surrounding activities could prove unpredictable, and perhaps unmanageable. At the very least, permitting the planned protest would likely require defendants to deploy additional security personnel and resources which may or may not be available. We therefore conclude that a preliminary injunction is inappropriate in light of defendants' security concerns, which in the circumstances presented are entirely "reasonable." *Perry*, 460 U.S. at 46.

\*        \*        \*        \*

Accordingly, plaintiffs' motion for a stay of the May 18, 2007 order and judgment of the District Court is **DENIED**.