07-2171-cv
Sussman v. Crawford

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

_____

August Term, 2008

(Argued: October 29, 2008                                    Decided: December 2, 2008)

Docket No. 07-2171-cv

_____

MICHAEL H. SUSSMAN, BENNETT WEISS, MAURY KNIGHT, AND DEMOCRATIC ALLIANCE OF ORANGE COUNTY,

*Plaintiffs-Appellants,*

— v .—

BRIAN A. CRAWFORD, GARRISON COMMANDER, AND UNITED STATES MILITARY ACADEMY AT WEST POINT,

*Defendants-Appellees.*

_____

Before:        WALKER, B. D. PARKER, AND RAGGI, *Circuit Judges*.

_____

Appeal from a judgment of the United States District Court for the Southern District of New York (Brieant, *J.*).  We AFFIRM.

_____

STEPHEN BERGSTEIN, Bergstein & Ullrich, LLP, Chester, N.Y., *for Appellants*

MARA E. TRAGER, Assistant United States Attorney (Jeannette A. Vargas and David S. Jones, Assistant United States Attorneys, *on the brief*),  *for* Michael J. Garcia, United States Attorney, Southern District of New York, *for Appellees*

_____

PER CURIAM:

Appellants, three individuals and the Democratic Alliance of Orange County (collectively, the "Alliance"), comprise a group of political activists who oppose the administration's foreign and domestic policies.  Since May 2004, the Alliance has held marches and rallies protesting administration spokespersons invited to speak at the Commencement ceremonies at the United States Military Academy at West Point, a federal military installation.  In early April 2007, the Alliance learned that Vice President Richard Cheney was slated to speak at West Point's Commencement on May 26, 2007, and thereafter sent a letter to West Point on April 16, seeking permission to protest within West Point's gates (the "cantonment").  Garrison Commander Colonel Brian A. Crawford ("Crawford") sent a response to this letter on May 14, twelve days prior to Commencement, denying the Alliance's request.  In his letter, Col. Crawford clarified the application of the West Point speech

2

policy, noting that West Point has never permitted "protests or demonstrations . . . inside the gates of the installation" and that such demonstrations were inconsistent with the "military mission and [could] detract from the good order, discipline, security, morale, or loyalty of the Soldiers" working there. He further explained that he had determined that there was "no safe way for up to 1000 people to assemble in any area on the military reservation on May 26, 2007 to protest the appearance of the Vice President of the United States at the graduation ceremony that morning without compromising the safety of our residents, our graduation visitors, and the protesters themselves."

On May 15, 2007, the Alliance brought an action in the District Court for the Southern District of New York claiming that West Point's USMA Regulation 27-2 (the "2004 Speech Policy") violated the First Amendment, and sought both a preliminary injunction requiring West Point to permit its protest within the cantonment at the 2007 Commencement and a permanent injunction striking down the 2004 Speech Policy. The District Court (Brieant, *J.*) consolidated the motion for a preliminary injunction and the trial on the merits. Finding that West Point's denial of the Alliance's request was "supported by good faith content-neutral security concerns . . . fully substantiated in the trial record," the District Court held that West Point had not violated the First Amendment. The court denied the Alliance all relief and dismissed its complaint.

The Alliance subsequently filed an emergency motion in this Court to stay the District Court's judgment, which would have had the effect of permitting the demonstration to proceed. We denied the application, concluding that the Alliance had not shown a clear or substantial likelihood of success on the merits of its First Amendment claims. *See Sussman v. Crawford* (*Sussman I*), 488 F.3d 136 (2d Cir. 2007). We held that, as the Alliance had conceded, West Point is a nonpublic

forum, and that it could therefore place restrictions on speech so long as they are "reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Id.* at 140 (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983)) (internal quotation marks omitted). Applying *Greer v. Spock*, 424 U.S. 828 (1976), we determined West Point's policy prohibiting demonstrations within its gates to be "content-neutral" and not of "the type of discriminatory censorship that the First Amendment seeks to prevent." *Sussman I*, 488 F.3d at 141. We also agreed with the District Court that the proposed demonstration raised "legitimate security concerns." *Id*. As a result, we denied the emergency motion. We now reach the merits of the Alliance's appeal.

We review the District Court's "findings of fact after a bench trial for clear error and its conclusions of law *de novo*," *Amalfitano v. Rosenberg*, 533 F.3d 117, 123 (2d Cir. 2008), while taking into account, as we may, this Court's prior decision in this case. *See Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 148-49 (2d Cir. 1999) (stating that the law of the case doctrine, which posits that a court's prior decision upon a rule of law generally should "govern the same issues in subsequent stages in the same case," is at its least binding in the context of interlocutory orders).

The Alliance brings substantially the same constitutional claims as those raised previously in *Sussman I*. First, it contends that West Point's speech policy's "blanket ban" on demonstrations within the cantonment violates the First Amendment. We abide by our decision in *Sussman I* and reject this argument. It is well settled that "access to a nonpublic forum may be restricted by government regulation as long as the regulation 'is reasonable and not an effort to suppress expression merely because officials oppose the speaker's view.'" *Bd. of Airport Comm'rs of L.A.*

4

*v. Jews for Jesus, Inc.*, 482 U.S. 569, 573 (1987) (quoting *Perry Educ. Ass'n*, 460 U.S. at 46). Not only has the Alliance conceded that West Point is a nonpublic forum, but also the Supreme Court routinely has classified military installations as nonpublic fora for First Amendment purposes. *See, e.g.*, *Greer*, 424 U.S. at 838; *United States v. Albertini*, 472 U.S. 675, 686 (1985) (citing *Greer*, 424 U.S. at 836). While the West Point reservation differs from some other military installations in that it houses an Academy and often invites speakers to address its cadets, we believe that the presence of the Academy within the cantonment is not sufficient to convert West Point into a public forum. *See Gen. Media Commc'ns, Inc. v. Cohen*, 131 F.3d 273, 279 (2d Cir. 1997) (citing *Albertini*, 472 U.S. at 685-86).

The District Court correctly found that West Point's speech policy is constitutional on its face because the policy is "reasonable" and "viewpoint-neutral." *See Perry Educ. Ass'n*, 460 U.S. at 46, 61. As we held in *Perry v. McDonald*, restrictions on speech in nonpublic fora must be "reasonable in light of the purpose of the forum . . . and reflect a legitimate government concern." 280 F.3d 159, 169 (2d Cir. 2001) (alteration in original) (internal quotation marks omitted). Although the Alliance contends that the language of West Point's 2004 Speech Policy allowed for demonstrations within the cantonment, and that the Garrison Commander's denial of its request to protest constituted arbitrary application of the speech policy, this reading is not supported by the policy's text. *See Sussman I*, 488 F.3d at 141 n.2. Furthermore, the Alliance's invocation of *Jews for Jesus* in support of its First Amendment claim is misplaced for two reasons: First, although the Supreme Court assumed, without deciding, that Los Angeles International Airport was a non-public forum, that facility was not akin to West Point, which is a closed post that civilians may not enter as freely as

5

they would an airport. Second, West Point's policy restricting some forms of political speech does not compare with LAX's ban on all "First Amendment activities." 482 U.S. at 574. By contrast, West Point's speech policy restricts only some modes of communication in line with its military purpose. As we held in *Make the Road by Walking, Inc. v. Turner*, 378 F.3d 133, 148 (2d Cir. 2004), "[t]he government can reasonably exclude expression that undermines the purpose served by a nonpublic forum," with the "most common reason for such an exclusion [being] . . . that the excluded expression is distracting or disruptive." It follows that West Point's speech policy, in aiming to exclude from the reservation expression that might "detract from the good order, discipline, security, morale, or loyalty of the Soldiers who are assigned to or work" there, is reasonable. *Sussman I*, 488 F.3d at 139.

Moreover, we conclude that West Point's ban on demonstrations within the cantonment is viewpoint-neutral, given that no protestors have been allowed to protest there since the speech policy's enactment. The Alliance has not established that West Point has applied the policy in a discriminatory fashion to the detriment of either the Alliance or others, nor has it adduced evidence that West Point's denial of its request to demonstrate was predicated on its political views.

The Alliance further claims that the 2004 Speech Policy's lack of a deadline by which the Garrison Commander must respond to demonstration requests invalidates the policy under the First Amendment. In the interim between our prior decision in *Sussman I* and the present appeal, West Point amended the 2004 Speech Policy such that its current policy ("2008 Speech Policy") requires the Garrison Commander to respond to a demonstration request "not later than 14 days prior to the proposed date of the event, absent extraordinary circumstances and/or military necessity." USMA

6

Reg. 27-2, 1-2(f). In light of this amendment, Appellees argue that the Alliance's First Amendment claim regarding the prior policy's lack of a deadline is now moot. In light of West Point's adoption of the 2008 Speech Policy, which contains a deadline that will foreclose the alleged prospect of arbitrarily delayed responses, there is now "no reasonable expectation that the alleged violation will recur," and "interim . . . events have completely and irrevocably eradicated the effects of the alleged violation." *Lamar Adver. of Penn, LLC v. Town of Orchard Park, N.Y.*, 356 F.3d 365, 375 (2d Cir. 2004) (internal quotation marks omitted). We therefore conclude that West Point's "voluntary cessation" of the conduct in question moots the Alliance's claim relating to the lack of a deadline.

Finally, the Alliance contends that the District Court erred in finding that Appellees properly denied its request to demonstrate within West Point's cantonment on Commencement day.[1] While the Alliance argues that Appellees' denial of its demonstration request constituted an arbitrary and capricious application of their speech policy, we identify no support for this contention in the record. We reaffirm our previous determination that the District Court properly identified "legitimate security concerns" that motivated Appellees' denial of the Alliance's demonstration request. *See Sussman I*, 488 F.3d at 141. A protest (1) in the cantonment (2) consisting of at least 1,000 marchers, the peacefulness of whom the Alliance could not establish in advance, and (3) during the

---

[1]We note that the Alliance's as-applied challenge to West Point's Speech Policy is not moot, in that the Alliance's injury with respect to West Point's denial of its demonstration request is capable of repetition yet evading review. *See Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 648 (2d Cir. 1998) (finding injury capable of repetition yet evading review because the organization had "only a few weeks between being notified that its application for a permit was denied and the date of the Parade in which to obtain judicial review," and this period was "clearly insufficient for full litigation of [the organization's] claims").

Vice President's speech to an audience of 20,000 people, unquestionably raises security concerns that would justify West Point's denial of the requested demonstration.[2] Because Appellees therefore cannot be said to have "applied [their Speech Policy] irrationally, invidiously, or arbitrarily" against the Alliance, *see Greer*, 424 U.S. at 840, we hold that Appellees' denial of the Alliance's demonstration request did not violate the First Amendment.

Consequently, we AFFIRM the judgment of the District Court.

---

[2]Although the Alliance submitted at oral argument that Appellees' rejection of demonstration requests involving fewer marchers on dates other than Commencement could not survive First Amendment scrutiny, because no such rejection is before the Court in this case, we do not consider that possibility at this time.