08-3075-cv
Maslow v. Board of Elections, NYC

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

————————————

August Term, 2008

(Argued: May 19, 2009　　　　　　　　Decided: September 30, 2011)

Docket No. 08-3075-cv

————————————

LORI S. MASLOW, JEMEL JOHNSON, KENNETH BARTHOLEMEW, PHILIP J. SMALLMAN, JOHN G. SERPICO,

*Plaintiffs-Appellants*,

CAROL FAISON, MARIA GOMES, ZACARY LARECHE, LIVIE ANGLADE,

*Plaintiffs*,

— V.—

BOARD OF ELECTIONS IN THE CITY OF NEW YORK,

*Defendant-Appellee*.

————————————

Before:

STRAUB, HALL, and LIVINGSTON, *Circuit Judges*.

————————————

Plaintiffs, a group of prospective political candidates, petition circulators, and voters, appeal from the May 23, 2008, order of the United States District Court for the Eastern District of New York (Garaufis, *J.*) awarding summary judgment to the Board of Elections in the City of

New York and upholding the State's "Party Witness Rule." The Rule, contained in New York

Election Law § 6-132, limits who a candidate for a political party's nomination can use to

circulate so-called "designating petitions," which allow the candidate to appear on the party

primary ballot. Unless the circulator is a notary public or commissioner of deeds, the Party

Witness Rule restricts designating petition circulators to "enrolled voter[s] of the same political

party as the voters qualified to sign the petition," N.Y. Elec. Law § 6-132(2), the party in whose

primary the candidate seeks to run. Because Plaintiffs are without a right to have non-party

members participate in a political party's nomination process, the judgment of the district court

is AFFIRMED.

AFFIRMED

_____

AARON D. MASLOW, Brooklyn, NY, *for Plaintiffs-Appellants*.

ELIZABETH S. NATRELLA (Leonard Koerner, Stephen Kitzinger, of counsel, *on the brief*), for Michael A. Cardozo, Corporation Counsel of the City of New York, New York, NY, *for Defendant-Appellee*.

_____

Hall, *Circuit Judge*:

Plaintiffs, a group of prospective political candidates, petition circulators, and voters,

appeal from the May 23, 2008, order of the United States District Court for the Eastern District

of New York (Garaufis, *J*.) awarding summary judgment to the Board of Elections in the City of

New York and upholding the State's "Party Witness Rule" ("the Rule"). The Rule, contained in

New York Election Law § 6-132, limits who a candidate for a political party's nomination can

use to circulate so-called "designating petitions," which allow the candidate to appear on the

party's primary ballot. Unless the circulator is a notary public or commissioner of deeds, the

Party Witness Rule restricts designating petition circulators to "enrolled voter[s] of the same political party as the voters qualified to sign the petition," N.Y. Elec. Law § 6-132(2), the party in whose primary the candidate seeks to run.  Because Plaintiffs are without a right to have non-party members participate in a political party's nomination process, the judgment of the district court is AFFIRMED.

## I. Background

New York enacted the Party Witness Rule in the early 1950s, apparently in response to incidents of "party raiding," whereby members of one party would actively participate in the primary of a rival party in the hope of influencing that party's candidate nomination and thus improving their own chances in the general election.  (*See* Governor's Bill Jacket, N.Y. Laws of 1951, Ch. 351, pp. 12-13, Ex. to Pls.' Mem. of Law in Supp. of Mot. for Summ. J., Dist. Ct. Dk. No. 39.)  The Rule operates as a restriction on the class of persons a potential candidate can use to circulate so-called "designating petitions," which allow the candidate to appear on a party's primary ballot.[1]  Subject to an exception for notaries public and commissioners of deeds, *see* N.Y. Elec. Law § 6-132(3), the only people allowed to circulate designating petitions are registered voters who are enrolled in the party from which the candidate is seeking nomination, *id.* at § 6-132(2).[2]  These petition circulators are known as "subscribing witnesses."

---

[1] In New York, candidates for most party nominations need a certain number of party member signatures to compete in the party primary.  *See* N.Y. Elec. Law § 6-136.  It is on the designating petitions that these signatures are collected.  *Id.* § 6-118.

[2] In relevant part, New York Election Law § 6-132(2) reads:  "There shall be appended at the bottom of each sheet [of the designating petition] a signed statement of a witness who is a duly qualified voter of the state and an enrolled voter of the same political party as the voters qualified to the sign the petition . . . ."

3

Plaintiffs consist principally of two groups.  The first, Phillip J. Smallman and John G. Serpico, are former unsuccessful candidates for Civil Court Judge in Kings County.  They would like to run again in a party primary but, in connection with this effort, they want to use non-party member subscribing witnesses.  These are the "candidate plaintiffs."  The other group, Jemel Johnson, Kenneth Bartholemew, and Lori S. Maslow, are individuals who desire to serve as subscribing witnesses in the run-up to primaries for political parties to which they do not belong.  Johnson and Bartholemew have attempted to serve in this capacity in the past, but, because of the Party Witness Rule, the signatures they collected were invalidated.  These are the "subscribing witness plaintiffs."  Additionally, in their complaint, Plaintiffs claim that Maslow desires to vote in a party primary election for candidates that have used non-member subscribing witnesses.  (Am. Compl. 15, ¶ 83, Dist. Ct. Dk. No. 14.)

In the district court, Plaintiffs sought a declaratory judgment under 42 U.S.C. § 1983 that the Party Witness Rule violated their constitutional rights protected by the First and Fourteenth Amendments.  They requested an injunction preventing the defendant New York City Board of Elections from enforcing the Rule.  They claimed that the Rule restrained their ability to speak freely and to associate with others for political purposes and that the notary public exception in § 6-132(2) deprived the subscribing witness plaintiffs of equal protection under the law.  Not challenged were New York Election Law §§ 6-140 and 6-142 that allow candidates to secure "independent nominations" to appear on the general election ballot, bypassing the party system entirely.  Anyone may serve as a subscribing witness to an independent nomination petition so long as that person is a "duly qualified voter of the State of New York."  *Id.* § 6-140(1)(b).

Both sides moved for summary judgment and the district court granted judgment for the Board. In so doing, it relied heavily on the United States Supreme Court's decision in *New York State Board of Elections v. Lopez Torres*, 552 U.S. 196 (2008), which reemphasized political parties' First Amendment freedom to control their own nomination process. The district court stated that the essence of Plaintiffs' complaint was "that they have been denied the opportunity to influence and meaningfully participate in the nominee-selection process in Kings County because they are not members of the Democratic Party, which is the dominant party in New York." *Maslow v. Bd. of Elections*, No. 06-CV-3683 (NGG), 2008 U.S. Dist. LEXIS 41293, at *28 (E.D.N.Y. May 23, 2008). Given *Lopez Torres* and the long line of precedent that came before it, the district court concluded that Plaintiffs did not assert a cognizable injury. *Id.* at *28-*29. Plaintiffs appeal; for substantially the same reasons given by the district court, we affirm.

## II. Discussion

The material facts of this case are not in dispute.[3] Instead, the parties raise purely legal questions concerning the scope of the First and Fourteenth Amendments to the Untied States Constitution. We review *de novo* the district court's resolution of these issues by summary judgment. *See, e.g.*, *Green Party of Conn. v. Garfield*, 616 F.3d 189, 198 (2d Cir. 2010).

All election laws impose at least some burden on the expressive and associational rights protected by the First Amendment. *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). To determine whether a particular burden rises to the level of a constitutional violation, we weigh the

---

[3] Plaintiffs appear to challenge the Party Witness Rule as applied, and the parties do disagree over the admissibility and accuracy of certain affidavits submitted by Plaintiffs. Fully credited, however, these affidavits contain nothing that might affect the outcome of this case, and, therefore, do not give rise to any issue of material fact. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001) (defining materiality for purposes of summary judgment).

"character and magnitude" of a plaintiff's injury against the state's interests supporting the regulation. *Id.* at 434 (citation and quotation marks omitted). The level of scrutiny we apply to the state's justification depends on the rule's effect on First Amendment rights. *Id.* Logically, the greater the burden, the more exacting our inquiry. *Id.* Where the burden on a plaintiff's First Amendment rights is trivial, a rational relationship between a legitimate state interest and the law's effect will suffice. *Cf. Price v. N.Y. State Bd. of Elections*, 540 F.3d 101, 109 (2d Cir. 2008) (requiring laws that impose minor *non-trivial* burdens be reasonably tailored and justified by an important state interest).

The Party Witness Rule imposes little or no burden on Plaintiffs' First Amendment rights. Although Plaintiffs claim that the Rule operates as a restraint on political speech, at bottom they assert an associational right to have non-party members participate in party primary elections. Because political parties have a strong associational right to exclude non-members from their candidate nomination process, Plaintiffs have no constitutional right pursuant to which such participation may be effected.

The Supreme Court has emphasized—with increasing firmness—that the First Amendment guarantees a political party great leeway in governing its own affairs. *See Lopez Torres*, 552 U.S. at 202-03; *Cal. Democratic Party v. Jones*, 530 U.S. 567, 574-75 (2000); *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 357-58 (1997); *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 224 (1989); *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 216 n.6 (1986); *Democratic Party of U.S. v. Wisconsin ex rel. La Follette*, 450 U.S. 107, 122 (1981); *see also Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 462-63 (2008) (Scalia, *J.*, dissenting). As these cases make clear, the First Amendment affords

6

political parties an autonomy that encompasses the right to exclude non-members from party functions, and "[i]n no area is the political association's right to exclude more important than in the process of selecting its nominee." *Cal. Democratic Party*, 530 U.S. at 575.

A political party's associational right to exclude forecloses the possibility that non-party members have an independent First Amendment right to participate in party affairs. *Id.* at 583-84 (citing *Tashjian*, 479 U.S. at 215 n.6); *see also Rosario v. Rockefeller*, 410 U.S. 752, 758 (1973); *Nader v. Schaffer*, 417 F. Supp. 837, 847 (D. Conn. 1976) (three-judge panel), *summarily aff'd*, 429 U.S. 989 (1976). Specifically, the Supreme Court has stated: "As for the associational 'interest' in selecting the candidate of a group to which one does not belong, that falls far short of a constitutional right, if indeed it can even fairly be characterized as an interest." *Cal. Democratic Party*, 530 U.S. at 573 n.5.

Here, Plaintiffs seek to open the political parties' candidate nomination process to subscribing witnesses from outside of the parties' membership. If this claim is based on their own associational rights (*see* Pls.-Appellants' Br. 35), it fails. The subscribing witness plaintiffs, as non-members, are in no position to assert the parties' associational rights, and are without any right of their own to exert influence over the nomination process. *See Lopez Torres*, 552 U.S. at 203-04; *Cal. Democratic Party*, 530 U.S. at 573 n.5. Likewise, the candidate plaintiffs are not the exclusive representatives of the political parties as a whole and cannot unilaterally exercise the parties' associational rights. *Cf. Tashjian*, 479 U.S. at 213-17 (concluding that a *party* has a

7

fundamental associational right to invite non-members to participate in the selection of its nominees for general election).[4]

To the extent that Plaintiffs' claim is based on the candidate plaintiffs' access to the ballot and voter plaintiffs' coadunate right to vote (*see* Pls.-Appellants' Br. 35-40),[5] it also fails. Ballot access restrictions that unduly "limit the field of candidates from which voters might choose" may be unconstitutional. *Anderson v. Celebrezze*, 460 U.S. 780, 786-87 (1983) (internal quotation marks omitted). But the Supreme Court has focused almost exclusively on the "field of candidates" available for voters to choose from at a general election, not the field vying for a party's nomination. *See generally Lopez Torre*s, 552 U.S. at 207; *see also Norman v. Reed*, 502 U.S. 279 (1992) (addressing signature requirement for new parties to appear on general election ballot); *Munro v. Socialist Workers Party*, 479 U.S. 189 (1986) (addressing requirement that small-party candidates receive minimum number of blanket primary votes to appear on general election ballot); *Anderson*, 460 U.S. at 782 (addressing filing deadline for presidential candidates to appear on general election ballot); *Am. Party of Tex. v. White*, 415 U.S. 767 (1974) (addressing convention and signature requirements for small parties to appear on general election ballot); *Jenness v. Fortson*, 403 U.S. 431 (1971) (addressing signature requirement for

---

[4] Our decision in *Lerman v. Board of Elections*, 232 F.3d 135 (2d Cir. 2000), is not to the contrary. The subscribing witness residency requirement at issue in that case was as much of an impediment to the exercise of political parties' associational rights as it was to the exercise of the individual candidates' rights. *See id.* at 146-48. In other words, the associational rights of the candidates and the parties were aligned.

[5] In ballot access cases, the Supreme Court has stated that "the rights of voters and the rights of candidates do not lend themselves to neat separation." *Burdick*, 504 U.S. at 438 (quoting *Bullock v. Carter*, 405 U.S. 134, 143 (1972)) (internal quotation marks omitted). To the extent that a candidate is denied access to the ballot, voters are to the same degree denied the right to vote for that candidate.

independent candidates to appear on general election ballot); *Williams v. Rhodes*, 393 U.S. 23 (1968) (addressing signature requirement for small parties to appear on general election ballot). *But see Bullock*, 405 U.S. at 146-47 (holding that independent access to general election ballot is insufficient to overcome extraordinarily severe restrictions on access to the primary ballot). Indeed, while states may require that political parties select their candidates for general election through a primary, such contests are not constitutionally mandated and, in their absence, parties may rely—in whole or in part—on nominating conventions. *See Lopez Torres*, 552 U.S. at 203, 206-07; *see also Tashjian*, 479 U.S. at 211 (describing Connecticut's hybrid convention primary system).

The candidate plaintiffs in this case have ample access to the ballot both in the primary and general elections. New York Election Law §§ 6-140 and 6-142 provide for independent access to the general election ballot upon collection of a certain number of signatures. In *Lopez Torres*, the Supreme Court considered these very provisions and stated that the ballot access provided by them "easily pass[es] muster" under the relevant precedent.[6] 552 U.S. at 207. Moreover, if open access to the general election ballot were not by itself enough, the Party Witness Rule does not substantially restrict the candidate plaintiffs' access to the primary ballot. Someone running for Civil Judge in New York City—as the candidate plaintiffs have already done and would like to do again—needs to obtain at least 4,000 party-member signatures in

---

[6] Neither we nor the Court in *Lopez Torres* have an opportunity to decide whether the requirement contained in § 6-140 that subscribing witnesses be "duly qualified voter[s]" violates potential candidates' right to free speech. *Cf. Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 197 (1999) (holding unconstitutional a Colorado law requiring that ballot initiative petition circulators be registered voters). Because we uphold the Party Witness Rule and because party enrollment is contingent on registering to vote, the registration requirement contained in § 6-132(2) is necessarily valid.

9

order to appear on the primary ballot. *See* N.Y. Elec. Law § 6-136. In other words, there will be at least that number of potential witnesses within the relevant district.

Above all else, Plaintiffs attempt to transform their associational claim into a free speech claim by arguing that the circulation of designating petitions is "interactive political speech" that New York may only restrain subject to strict scrutiny. For support they rely on *Buckley*, 525 U.S. at 186-87, *Meyer v. Grant*, 486 U.S. 414, 422 & n.5 (1988), and our decision in *Lerman*, 232 F.3d at 146. Those cases recognize petition circulating as a form of highly protected political speech. But Plaintiffs are only restrained from engaging in speech that is inseparably bound up with the subscribing witness plaintiffs' association with a political party to which they do not belong. As Plaintiffs have no right to this association, *see, e.g.*, *Cal. Democratic Party*, 530 U.S. at 575, they have no right to engage in any speech collateral to it.[7]

As Plaintiffs have not demonstrated any non-trivial burden to their First Amendment rights, we need not closely analyze New York's justification for the Party Witness Rule. We only note that the State has a legitimate interest in protecting its political parties from party raiding, *see Rosario*, 410 U.S. at 760-62, which was clearly contemplated by members of the State Legislature when the Rule was adopted. The Party Witness Rule helps combat party raiding by denying hostile non-party elements access to one part of a political party's nomination process.

---

[7] For example, we would not countenance a claim that a state law legitimately excluding non-members from a political party's nominating convention restrains core political speech simply because the non-members cannot make political speeches inside the convention hall.

## III. Conclusion

For the foregoing reasons, the decision of the district court is AFFIRMED.[8]

---

[8] Although the district court did not address Plaintiffs' Equal Protection argument, our review is *de novo* and we may affirm based on "any ground appearing in the record." *Freedom Holdings, Inc. v. Cuomo*, 624 F.3d 38, 49 (2d Cir. 2010). Plaintiffs claim that New York's rule allowing non-party member notaries public and commissioners of deeds to circulate party designating petitions, *see* N.Y. Elec. Law § 6-132(3), denies the subscribing witness plaintiffs equal protection under the law because these notaries and commissioners do not have to be party members. New York has a legitimate interest in expanding the class of persons who may circulate designating petitions for party primaries, while still protecting its political parties from raiding and fraud. Allowing all notaries public and commissioners of deeds to circulate is rationally related to this interest because it allows potential candidates to choose petition circulators from outside the party membership that the party can trust because of their license and expertise.