FILED

09/23/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0396

DA 20-0396

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 244

MONTANA DEMOCRATIC PARTY and TAYLOR BLOSSOM,
RYAN FILZ, MADELINE NEUMEYER, and REBECCA WEED,
individual electors,

Plaintiffs and Appellees,

v.

STATE OF MONTANA, by and through its
SECRETARY OF STATE COREY STAPLETON,

Defendant and Appellant.

APPEAL FROM:     District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. DDV 2020-856
Honorable James P. Reynolds, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Matthew T. Meade, Smith Oblander & Meade, PC, Great Falls, Montana

Austin James, Chief Legal Counsel, Secretary of State's Office, Helena,
Montana

For Appellees:

Peter Michael Meloy, Meloy Law Firm, Helena, Montana

Matthew Gordon, Perkins Coie LLP, Seattle, Washington

For Amicus Curiae Montana Republican Party:

Anita Y. Milanovich, Milanovich Law, PLLC, Butte, Montana

Emily Jones, Talia G. Damrow, Jones Law Firm, PLLC, Billings, Montana

For Amici Curiae Lorrie Campbell and Jill Loven:

Chris J. Gallus, Gallus Law, Helena, Montana

Edward D. Greim, Graves Garrett, LLC, Kansas City, Missouri

Submitted on Briefs: August 19, 2020

Decided: September 23, 2020

Filed:

Clerk

2

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1    The State of Montana, by and through its Secretary of State Corey Stapleton (the "Secretary") appeals the Findings of Fact, Conclusions of Law, and Order of the First Judicial District Court, Lewis and Clark County. The District Court concluded the petition seeking to qualify the Montana Green Party to hold a primary election to select its nominees for office and to obtain ballot access for those nominees for the November 2020 general election failed to meet the requirements of § 13-10-601(2), MCA, and enjoined the Secretary and all persons acting under his authority from giving any effect to the petition. In accordance with our August 19, 2020 Order, we affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2    In late January 2020, over twenty petition circulators began to collect signatures for a petition seeking to qualify the Montana Green Party to hold a primary election to select its nominees for office and obtain ballot access for those nominees in the 2020 general election. In mid-February, Montana Green Party leadership disclaimed the petition, and publicly stated the Montana Green Party was not involved in the petition effort. It was unclear at that time who was organizing and funding the signature gathering. In response, the Montana Democratic Party organized a countereffort, reaching out to petition signers and encouraging them to withdraw their signatures from the petition because an unknown group was organizing and funding the effort. On or before March 6, around 150 petition signers, including plaintiffs Taylor Blossom and Rebecca Weed, asked for their names to be removed from the petition. On March 6, the Secretary completed the tabulation of submitted signatures and announced the Montana Green Party had been qualified for the

3

primary election through the petition process. Shortly before the primary election, Montana Green Party leadership publicly disclaimed the candidates running under its banner in the primary.

¶3 On March 24, news reports widely broadcast that the petition had been sponsored and organized by the Montana Republican Party. The Montana Republican Party Central Committee had contracted with the petition gathering firm Advanced Micro Targeting to gather the signatures for the petition. The expenditure was credited as an in-kind contribution to "Montanans for Conservation" on financial disclosures. Montanans for Conservation filed as an independent committee with the Commission on Political Practice in January 2020, rather than as a minor party qualification committee pursuant to § 13-37-602, MCA. Its status was not changed to a minor party qualification committee until March 23. The Montana Republican Party is the sole contributor to Montanans for Conservation.

¶4 After these news reports, the Montana Democratic Party redoubled its efforts to contact petition signers to educate them as to the who funded the petition effort, the Montana Green Party's disavowal of the petition and the candidates purported to be running under its party designation, and encourage them to withdraw their signatures based on this information. Following these efforts, hundreds of petition signers requested to withdraw their signatures from the petition between March 6 and June 2—the day of the primary election. Many of the withdrawal requests were submitted with an electronic signature. The Secretary declined to honor requests submitted after March 6—the day the Secretary's office completed statewide tabulation of the petition signatures.

¶5 The Montana Democratic Party and four petitioner signers who asked to have their signatures removed from the petition sued the Secretary, seeking an injunction to prevent the Secretary and his office from giving effect to the petition. The Complaint alleges, in relevant part, that "the Montana Green Party had absolutely nothing to do with the Petition" and sought declaratory relief that the petition failed to meet the requirements of § 13-10-601, MCA.

## STANDARD OF REVIEW

¶6 We review a district court's conclusions and applications of law for correctness. *Larson v. Stapleton ex rel. State*, 2019 MT 28, ¶ 16, 394 Mont. 167, 434 P.3d 241. We review its findings of fact for clear error. *Larson*, ¶ 16. We review the grant of injunctive relief for a manifest abuse of discretion. *Larson*, ¶ 16. "We will affirm the district court when it reaches the right result, even if it reaches the right result for the wrong reason." *Talbot v. WMK-Davis, LLC*, 2016 MT 247, ¶ 6, 385 Mont. 109, 380 P.3d 823 (internal quotations omitted).

## DISCUSSION

¶7 The plaintiffs raised various grounds to challenge the validity of the petition before the District Court, including challenges to the Secretary's refusal to honor withdrawal requests submitted after March 6 and refusal to accept withdrawal requests signed electronically. The District Court thoroughly considered all issues raised and issued a detailed order. The court agreed with the plaintiffs that the petition did not meet the requirements of § 13-10-601(2), MCA, and enjoined the Secretary and those acting under his authority from giving it any effect. The Secretary challenges various conclusions of

the District Court on appeal. We decline to address the contentions of the Secretary, however, because the findings of fact of the District Court unchallenged on appeal are dispositive.

¶8 Section 13-10-601(2)(a), MCA, provides: "*A political party* that does not qualify to hold a primary election under subsection (1) may qualify to nominate *its candidates* by primary election by presenting a petition, in a form prescribed by the secretary of state, requesting the primary election." (Emphasis added.) This section is clear who must present the petition: the political party seeking to nominate its candidates by primary election. The petition at issue in this case does not meet the most basic requirement of § 13-10-601(2), MCA: the political party seeking qualification through a petition must present the petition requesting the primary election.

¶9 The District Court found the Montana Republican Party sponsored and organized the petition and the evidence before the court demonstrated "the Montana Green Party disavowed the signature gathering process and has also disavowed the persons filing under the Green Party banner as not being true Green Party members or adherents."[1] These

_____

[1] Tellingly, the Montana Green Party has not participated at any stage of the litigation related to this petition in state court to keep itself on the 2020 general election ballot. On August 27, 2020—a week after the statutory deadline for the Secretary to certify the ballot for the general election—it appears the Montana Green Party moved to intervene in *Davis v. Stapleton*, No. 20-35734 (9th Cir. filed Aug. 20, 2020)—an appeal from a federal district court case brought by Green Party primary candidates and voters related to the subject petition—and the Ninth Circuit granted the motion on September 8, 2020, *see Davis v. Stapleton*, No. 20-35734, 2020 U.S. App. LEXIS 28430 (9th Cir. Sept. 8, 2020). It does not appear the Montana Green Party was a party to or sought to participate as a party in that matter before the federal district court. *See Davis v. Stapleton*, No. CV-20-62-H-DLC, 2020 U.S. Dist. LEXIS 150267 (D. Mont. Aug. 19, 2020). During this same time period, however, the Montana Green Party has been actively litigating a federal lawsuit challenging the constitutionality of the process governing minor party ballot access in Montana under § 13-10-601, MCA, *see Mont. Green Party v.*

6

findings—undisputed before the District Court and unchallenged on appeal—are sufficient to support the District Court's conclusion the petition fails to satisfy the requirements of § 13-10-601(2), MCA, and the injunction enjoining the Secretary and all persons acting under his authority from implementing or giving any effect to the petition. Under the facts of this case as presented to the District Court and unchallenged on appeal, it is clear the Montana Green Party did not present the petition requesting a primary election to nominate its candidates for the general election. The Secretary was without statutory authority to accept the petition at issue in this case, which was not presented, endorsed, or sponsored by the Montana Green Party at the time of the signature gathering and the submission of the petition to the election administrators of the counties where the signatures were gathered.[2] *See* § 13-10-601(2)(a), (c), MCA.

¶10 Given the facts of this case as presented to the District Court, Montanans for Conservation could not present the petition to election administrators to qualify the Montana Green Party under § 13-10-601(2), MCA. Under § 13-10-601, MCA, a political party may qualify to nominate its candidates for the general election through a state-sponsored primary in one of two ways: under subsection (1) by having a candidate

---

*Stapleton*, No. CV-18-87-H-BMM-JTJ, 2020 U.S. Dist. LEXIS 48859 (D. Mont. Mar. 20, 2020), and briefing is ongoing in its appeal from that case, *see Mont. Green Party v. Stapleton*, No. 20-35340 (9th Cir. filed Apr. 15, 2020).

[2] If the statute allowed petitions to be presented to election administrators and then accepted by the Secretary of State without the subject minor party's participation or endorsement of the petition seeking to nominate that party's candidates through the primary process, serious concerns would be raised about violations of the associational rights of minor parties. *See Cal. Democratic Party v. Jones*, 530 U.S. 567, 120 S. Ct. 2402 (2000); *Maslow v. Bd. of Elections in City of New York*, 658 F.3d 291 (2d Cir. 2011).

for statewide office in either of the last two general elections receive a total vote equal to five percent or more of the total votes cast for the most recent successful candidate for governor; or under subsection (2) by presenting a petition requesting a primary election that is signed by a sufficient number of registered voters. "[A] political party that does not qualify to hold a primary election under [§] 13-10-601(1)[, MCA]" is a "minor political party." *See* § 13-37-601(4), MCA. A "minor party qualification committee" is "a combination of two of more individuals or a person other than an individual organized *in furtherance of an effort* to qualify a minor political party for primary elections using a minor party petition." *See* § 13-37-601(6), MCA (emphasis added). Montanans for Conservation originally registered as an independent committee pursuant to § 13-1-101(24), MCA, but was later recharacterized as a minor party qualification committee under § 13-37-601(6), MCA. Nothing in the language of § 13-1-101(24), MCA, § 13-37-601(6), MCA, or § 13-10-601(2), MCA, however, authorizes an independent committee or a minor party qualification committee to present a petition to election administrators to qualify a minor political party to nominate its candidates for the general election through a state-sponsored primary election. Although a minor political party committee may expend funds and time in furtherance of an effort to qualify a minor political party for primary elections using a minor party petition, that petition must be presented *by the political party* seeking to nominate its candidates through a primary election pursuant to § 13-10-601(2)(a), MCA. The record before the District Court established the Montana Green Party did not authorize Montanans for Conservation to present the petition to election administrators on its behalf.

8

¶11 Because the petition fails to satisfy this statutory requirement, we need not address any other grounds raised by the parties and decided by the District Court. Regardless of the District Court's reasons for its decision, we will not reverse the decision if it reaches the right result. *See Talbot*, ¶ 6.

¶12 The Dissent, at its essence, argues for strict application of election laws—"The election laws set forth with considerable particularity the requirements for petitions to place . . . a candidate on the ballot," Dissent, ¶ 23—but then asserts we should ignore the most fundamental requirement of those election laws—that the political party seeking to place its candidates on the ballot present the petition. Here, we are not dealing with an unpreserved claim. At its core, Appellees' suit challenged the validity of the petition under § 13-10-601, MCA, and we, in strict application of our election law, determined the petition to be invalid under that very statute. At times, we have identified and decided cases on dispositive issues intertwined with an appeal that the parties have not fully addressed. *See State v. Ber Lee Yang*, 2019 MT 266, 397 Mont. 486, 452 P.3d 897 (deciding case on issue, which the Court identified and on which it ordered supplemental briefing); *Leichtfuss v. Dabney*, 2005 MT 271, ¶ 37 n.8, 329 Mont. 129, 122 P.3d 1220 ("[I]f the boundaries of our opinions were circumscribed by the inadequacies of the briefs submitted on appeal, then in many cases we would be issuing opinions that set bad precedent and confuse, rather than clarify, the law."); *Craig v. Schell*, 1999 MT 40, ¶ 28, 293 Mont. 323, 975 P.2d 820 (overruling prior case law although neither party raised the issue and explaining the Court "cannot ignore the validity of the case upon which both parties and the District Court rely and its fundamental application to the facts presented");

9

*Kudrna v. Comet Corp.*, 175 Mont. 29, 51, 572 P.2d 183, 195 (1977) ("If the court were limited to the arguments and reasoning of counsel in its decisions of cases, to the exclusions of its own observations, many cases would lead us far from what we understand to be the true object of the court." (quotation omitted)); *see also U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 447, 113 S. Ct. 2173, 2178 (1993) ("[A] court may consider an issue antecedent to and ultimately dispositive of the dispute before it, even an issue the parties fail to identify and brief." (internal quotations omitted)); *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. at 446, 113 S. Ct. at 2178 ("[T]he court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." (internal quotation omitted)). It is abundantly clear from the record and the parties' and Amici's briefing the Montana Green Party was not in any way associated with gathering signatures or presenting the petition to election administrators. Quite simply an unauthorized political party or entity cannot present a petition to require a different political party to put the different political party's candidates on the ballot.

## CONCLUSION

¶13 For the forgoing reasons, the District Court's order enjoining the Secretary of State and all persons acting under his authority from implementing or giving effect to the petition to qualify the Montana Green Party as a minor party eligible for the 2020 election ballot is affirmed.

/S/ INGRID GUSTAFSON

10

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR


Justice Beth Baker, dissenting.

¶14    By the terms of their June 1, 2020 Complaint, "Plaintiffs initiate[d] this action to ensure that the Secretary respects the right of petition signers to withdraw their names from a petition, and to enjoin the Secretary from giving any effect to a petition that fails to meet the required minimum number of valid signatures required by Montana law."  The Complaint sought a declaration that: (1) the signature withdrawal requests rejected by the Secretary were valid; (2) the petition "thus fail[ed] to meet the thresholds required by the Political Party Qualification statute and is, accordingly, invalid"; and (3) "for the same reasons," the Secretary's certification of the Montana Green Party as a political party that could obtain ballot access in the November 2020 general election is similarly invalid.  The theory of the Plaintiffs' case was that, because "Montanans for Conservation" was a shell group of the Montana Republican Party that failed to properly disclose its petition-gathering activities until well after the petition was submitted to the Secretary of State, individuals who signed the petition believing it to have been sponsored by the Montana Green Party were misled and had the right to withdraw.

¶15    The issues joined in the litigation were whether the signature-withdrawal requests were too late, whether the signatures had been induced by fraud, and whether the Secretary was obligated to accept the electronic signatures by which voters sought to withdraw their

11

petition signatures. The two-day show-cause hearing focused on the validity of the withdrawals, and the District Court's findings and conclusions addressed those issues. On appeal, the Secretary raises three issues:

1. When does the "Final Act" of § 13-10-601(2) occur which presented the deadline for all withdrawals from the Petition to be submitted?

2. Did the Plaintiffs demonstrate, clearly and convincingly, that material facts regarding the Petitions [sic] itself were misrepresented or fraudulent?

3. Do electronic signatures[,] i.e. DocuSign[,] satisfy the formality requirements required to withdraw a signature from a Petition under state law?

The Plaintiffs argue in response that petition signers validly could and did withdraw their signatures after learning that the Montana Green Party did not organize or sponsor the petition. They contend the District Court properly concluded that the withdrawal forms with electronic signatures were timely submitted, that those forms should have been accepted and counted, and that because the petition lacks sufficient signatures without those withdrawn, it therefore does not qualify.

¶16 The Court, however, does not address either the questions presented on appeal, the Plaintiffs' response to the Secretary's arguments, or the District Court's findings and conclusions, concluding instead that the petition effort was void from the get-go because the Montana Green Party was not behind it.

¶17 The Court relies on the established principle that this Court may affirm a trial court if it reached the "right result" for the "wrong reason." Opinion, ¶ 6. That principle does not, however, displace the equally established principle that we will not decide an issue neither raised before the trial court nor briefed on appeal. *See Pilgeram v.*

12

*GreenPoint Mortg. Funding, Inc.*, 2013 MT 354, ¶ 20, 373 Mont. 1, 313 P.3d 839 (noting that we "do not consider new arguments or legal theories for the first time on appeal"); *Becker v. Rosebud Operating Servs.*, 2008 MT 285, ¶ 17, 345 Mont. 368, 191 P.3d 435 (reiterating that "this Court will not address either an issue raised for the first time on appeal or a party's change in legal theory"); *State v. Allum*, 2005 MT 150, ¶ 20, 327 Mont. 363, 114 P.3d 233 (declining to address an issue not raised in either the trial court or on appeal). The Court finds it unnecessary to address the issues the Secretary raises on appeal or the claims the Plaintiffs brought in their complaint, supplanting those claims with one of its own and deciding the case on that basis.

¶18　There is good reason for our settled jurisprudential policy of considering only those issues the parties have raised before the District Court and briefed on appeal. "This restraint is 'rooted in fundamental fairness to the parties[.]'" *Pilgeram*, ¶ 21 (quoting *Gary & Leo's Fresh Foods, Inc. v. State*, 2012 MT 219, ¶ 16, 366 Mont. 313, 286 P.3d 1218). For one, a party is in charge of its own case and may decide the issues and arguments it presents; we take the case as we find it. More importantly, limiting our consideration to the issues and arguments raised gives both parties notice and an opportunity to be heard on the decisive questions, which affords due process and presumably helps the Court reach sound decisions. Litigants should be able to expect the Court to follow the same practices it demands from them: that the theory of a case will not be changed on appeal. "New issues should only be reviewed on appeal if extenuating circumstances justify the party's failure to assert [its] legal theory at trial, such as the emergence of new precedent on the issue." *Pilgeram*, ¶ 21 (citations omitted).

13

¶19 The Court of course retains discretion to "review the merits of an unpreserved claim for plain error when 'the issue is directly constitutional.'" *Ber Lee Yang*, ¶ 33 (quoting *State v. Barrows*, 2018 MT 204, ¶ 11, 392 Mont. 358, 424 P.3d 612). But "to obtain plain error review, 'we still require the assertion of plain error to be raised and argued on appeal.'" *In re B.H.*, 2018 MT 282, ¶ 15, 393 Mont. 352, 430 P.3d 1006 (quoting *In re B.O.T.*, 2015 MT 40, ¶ 22, 378 Mont. 198, 342 P.3d 981). The rare exception, when the Court takes up an issue on its own accord—*sua sponte*—is a question like subject matter jurisdiction, which "involves the fundamental power and authority of a court to hear and decide an issue," *Pinnow v. Montana State Fund*, 2007 MT 332, ¶¶ 16-17, 340 Mont. 217, 172 P.3d 1273, or a party's standing to bring the claim, which is a "threshold requirement of every case," *Armstrong v. State*, 1999 MT 261, ¶ 4, 296 Mont. 361, 989 P.2d 364 (quoting *Vainio v. Vainio (In re Vainio)*, 284 Mont. 229, 235, 943 P.2d 1282, 1286 (1997)).

¶20 As the parties present it and as the Court decides it, this case has none of the hallmarks for the rare *sua sponte* consideration of unpreserved issues that neither party raises on appeal. Seizing on the Complaint's introductory remark that "the Montana Green Party had absolutely nothing to do with the Petition," the Court hopscotches the Complaint's pleaded claims to its prayer for relief seeking a declaration that "the [P]etition failed to meet the requirements of § 13-10-601, MCA." The Complaint, though, alleges this: "[T]he Petition fails to meet the requirements of Section 13-10-601(2), MCA, *because* it does not contain the requisite number of valid signatures from at least 34 House Districts." (Emphasis added.) The basis on which the Court invalidates the petition simply was not presented to the District Court, and the parties have had no opportunity to

14

express their views or to offer their analysis on the point. It is wrong to decide the case on that basis.[1]

¶21 Because I would decide the case on the issues and arguments presented, I address them briefly. First, the District Court properly relied on *State ex rel. Lang v. Furnish*, 48 Mont. 28, 36, 134 P. 297, 300 (1913), and *Ford v. Mitchell*, 103 Mont. 99, 61 P. 2d 815, 822 (1936), to conclude that "signers of a petition have an absolute right to withdraw therefrom at any time before final action thereon." But it incorrectly ruled that "final action" did not occur until ballots cast at the June 2020 primary election nominated individual Montana Green Party candidates for the general election ballot. The purpose of a minor political party petition is to qualify the minor party's candidates to participate in the election by having their names appear on the ballot with the party designation. The petition's purpose is not to nominate candidates for office—that is the function of the primary election itself. A minor political party's candidates may be certified to appear on the primary election ballot only if the petition is sufficient. The Secretary's "final action" on the petition thus occurs when, upon determining that the requisite number and

---

[1] The Court reaches to find case law in support of the ostensible proposition that we may go beyond the issues the parties present if there is a good reason to do so. Opinion, ¶ 12. For one, as the Court acknowledges, we directed supplemental briefing on the issue in *Ber Lee Yang*. The court of appeals did likewise in *United States Nat'l Bank*, 508 U.S. at 444, 113 S. Ct. at 2177. More, the cited quotes do not stand for such a broad proposition. We recognized in *Leichtfuss*, for example, that "ou[r] job is to address the issues presented by the parties on appeal" and—quoting *United States Nat'l Bank*—that the court is not limited to the parties' articulated legal theories "when an issue or claim is properly before the court." *Leichtfuss*, ¶ 37 n.8 (quoting *United States Nat'l Bank*, 508 U.S. at 447, 113 S. Ct. at 2178). And, in *Kudrna*, we emphasized that we were "not repudiating the sound rules of practice which require timely, specific objections to instructions and the full presentation of issues for review on appeal." *Kudrna*, 175 Mont. at 51, 572 P.2d at 195. In my view, it is unwise to perpetuate a theory that courts should take up an issue without affording the parties due process by giving them a chance to be heard on it.

distribution of signatures has been submitted, he certifies the party candidates' names for the primary election ballot. Under § 13-10-208(1), MCA, the Secretary is required to certify to local election administrator the "names and designations of candidates who have filed" for office ten days after the close of candidate filing for a primary election. In 2020, the Secretary's certification deadline was March 19, 2020. https://perma.cc/X52F-DTDN. The District Court thus should have held that signatures submitted prior to March 19 met the standards of *Lang* and *Ford*.

¶22 Next, the District Court also gave proper adherence to our precedent when it held that, despite the "final action" deadline, a voter may withdraw his or her signature upon clear and convincing proof that the voter was induced to sign by fraudulent misrepresentations. *State ex rel. Peck v. Anderson*, 92 Mont. 298, 306, 13 P.2d 231, 234 (1932). Without getting in to the parties' dispute whether the Plaintiffs established the type of fraud needed to meet the *Peck* standard—or the Amici's assertions that the District Court improperly refused to permit their intervention to counter the point—I would assume for purposes of this appeal that the Plaintiffs met their burden to show fraudulent misrepresentation.[2]

¶23 But that does not end the analysis. The crux of the dispute briefed on appeal, in my view, is whether the District Court correctly required the Secretary to accept voter signatures electronically submitted using the electronic document signature platform

---

[2] Were we to consider the fraud argument on the merits, it also would be necessary to consider the Amicus Montana Republican Party's contention that the District Court's process improperly failed to allow presentation of evidence they argued would rebut the Plaintiffs' claims.

16

DocuSign. Under Article IV, section 3 of the Montana Constitution, the Legislature "shall provide by law the requirements for . . . administration of elections." Subject to constitutional protections, the election process is purely statutory. In accordance with its authority, the Legislature has set forth specific procedures and requirements for citizen petitions on various ballot matters, including the process for nomination of candidates to office and—as relevant here—the qualification of minor political party candidates to appear on the ballot. The election laws set forth with considerable particularity the requirements for petitions to place an issue or a candidate on the ballot. The District Court rightly observed that the statutes do not expressly provide a process by which an individual may withdraw his or her signature from a minor political party qualification petition. Relying on Montana's Uniform Electronic Transactions Act (UETA or Act), the District Court held that the Secretary was obligated to accept the DocuSign signatures as valid because his failure to promulgate or announce in advance the deadline for, and form of, withdrawals he would accept demonstrated his consent to receiving withdrawals through electronic means. (Citing §§ 30-18-105 and -106, MCA.)

¶24 In applying the UETA, the District Court erred in two key respects. First, it stated without analysis that an elector's withdrawal of a petition signature is not a "transaction" because it is the voter's "unilateral act." The Act defines "transaction" as "an action or set of actions occurring between two or more persons relating to the conduct of business, commercial, or governmental affairs." Section 30-18-102(18), MCA. A voter who already has signed an official petition submitted to county and state election officials must rely on the actions of those same officials in seeking to withdraw his or her support from the same

17

petition. The voter's petition signature will count unless election officials "un-count" it. Plainly, the voter cannot take that official action alone. The District Court's unsupported conclusion to the contrary was illogical, and I would reject it.

¶25 Second, the District Court got backwards the standards UETA prescribes for government agencies. It held that the Secretary was obliged to promulgate a rule or policy expressly banning the submission of electronic signatures in order to reject the DocuSign withdrawals. UETA says the opposite. Under a provision that the District Court did not cite, the Act "does not require a governmental agency of this state to use or permit the use of electronic records or electronic signatures." Section 30-18-117(3), MCA. Instead, "each governmental agency shall determine whether, and the extent to which, it will send and accept electronic records and electronic signatures to and from other persons and otherwise create, generate, communicate, store, process, use, and rely upon electronic records and electronic signatures." Section 30-18-117(1), MCA. The only exception is that the government is required to accept electronic records when the law requires that a record be retained. *See* §§ 30-18-117(3), 30-18-111(1), (6), MCA. "To the extent that" an agency does allow electronic signatures, the statute permits the Secretary to specify the particulars, including among others "control processes and procedures as appropriate to ensure adequate preservation, disposition, integrity, security, confidentiality, and auditability of electronic records[.]" Section 30-18-117(2)(c), MCA.

¶26 As allowed by UETA, the Secretary of State has, for example, implemented a process for individuals to file their declarations of candidacy for office online. https://perma.cc/7DBD-G8Q9. And the office has adopted a rule allowing electronic

18

transmission of voting materials to electors with disabilities. Section 44.3.116, ARM. The Secretary also has adopted rules governing records retained on digital media. Section 44.4.101, *et seq.*, ARM. That the Secretary has not adopted a rule or policy that he will accept electronic records and electronic signatures for other types of election records means, under UETA, that he will not. "Whether an electronic record or electronic signature has legal consequences is determined by [UETA] and other applicable law." Section 30-18-104(5), MCA. Reading § 30-18-117, MCA, together with "applicable [election] law," which does not authorize electronic voter signatures in any context, it is plain that no law requires the Secretary to accept the electronic signatures at issue in this case.[3]

¶27 Finally, I would reject the parties' and Amici's respective assertions of constitutional infirmities. Because the Plaintiffs' claims are resolved by the application of plain statutory provisions, whether the Secretary followed a constitutionally sound public process in setting a deadline or manner for withdrawals is not material to resolution of the dispositive issues. And the Amici's assertions of constitutional error fail as well. In a

---

[3] In an April 30, 2020 ruling, another judge in the First Judicial District Court denied declaratory and injunctive relief to a group of ballot issue organizers who sought to require the Secretary to accept electronic DocuSign signatures for initiative petitions following the Governor's executive orders issued in response to the COVID-19 pandemic. *New Approach Montana, et al. v. State*, Lewis and Clark County Cause No. XBDV-2020-444 (1st Jud. Dist. Ct. Or. Apr. 30, 2020). Noting that UETA does not require state agencies to accept electronic signatures, the court in that case found no evidence that the Secretary of State or county clerks "have been consulted or consented to any use of electronic signatures[,]" that there was "no showing that DocuSign in the election initiative context meets the requirements of the UETA[,]" and "that there are no other known cases w[h]ere DocuSign was used in the context of seeking voter signatures for state or local initiatives." The court declined to "force the widespread application of the service across the fifty-six (56) county clerks offices or the Secretary of State." *New Approach*, pp. 8-9.

parallel action two Montana Green Party candidates and two voters filed in federal court, that court declined to enjoin the Secretary from complying with the Montana District Court's removal of the candidates from the ballot, concluding that the plaintiffs were unlikely to succeed on their claim that a failure to place Montana Green Party candidates on the November 2020 general election ballot would be "fundamentally unfair" or would result in a "significant disenfranchisement" of Montana electors. *Davis, et al.,* 2020 U.S. Dist. LEXIS 150267. The Ninth Circuit U.S. Court of Appeals denied emergency injunctive relief pending appeal of that order. *Davis*, 2020 U.S. App. LEXIS 28430.[4] Following Judge Christensen's reasoning, I would conclude that the Amici's constitutional arguments lack merit.

¶28 For these reasons, I would reverse the District Court on the issues the parties presented in their pleadings before that court and in their briefs on appeal here. I dissent from the Court's decision to affirm the District Court on independent grounds.

/S/ BETH BAKER

Justice Jim Rice joins in the Dissent of Justice Baker.

/S/ JIM RICE

---

[4] U.S. Supreme Court Justice Kagan also has denied a request to stay this Court's August 19 Order affirming the District Court, *Stapleton v. Montana Democratic Party*, S. Ct. No. 20A33 (application denied Aug. 25, 2020), and an application for emergency injunctive relief pending the Ninth Circuit's full review of Judge Christensen's order, *Davis v. Stapleton*, S. Ct. No. 20A41 (application denied Sept. 14, 2020).