# In the
# United States Court of Appeals
# For the Second Circuit

————————————

August Term, 2024
Argued: April 29, 2025
Decided: May 2, 2025
Opinion Issued: August 21, 2025

No. 25-764-cv

————————————————

JIM WALDEN,

*Plaintiff-Appellant,*

v.

PETER S. KOSINSKI, as the Co-Chair of the New York State Board of Elections, HENRY T. BERGER, as the Co-Chair of the New York State Board of Elections, ESSMA BAGNUOLA, as a Commissioner of the New York State Board of Elections, ANTHONY J. CASALE, as a Commissioner of the New York State Board of Elections, KRISTEN ZEBROWSKI STAVISKY, as Co-Executive Director of the New York State Board of Elections, RAYMOND J, RILEY, as Co-Executive Director of the New York State Board of Elections, NEW YORK CITY BOARD OF ELECTIONS,

*Defendants-Appellees.*

————————————

Before:     LYNCH, LEE, and NATHAN, *Circuit Judges.*

Plaintiff-Appellant Jim Walden appeals an interlocutory order entered in the United States District Court for the Eastern District of New York (DeArcy Hall, *J.*) denying his motion for a preliminary injunction.  Walden sought to enjoin officials

1

of the New York State Board of Elections (the "State Board defendants"), as well as the New York City Board of Elections (the "City Board"), from prohibiting him from using the word "Independence" or "Independent" as a part of the name of an independent body through which Walden seeks to run as a prospective nominee for the 2025 New York City mayoral election. *See* N.Y. Elec. Law §§ 2-124(2) and 6-138(3)(f) (collectively, the "Naming Provisions"). Walden contends that, as applied to him, the Naming Provisions violate his First Amendment rights to speech and association.

The district court denied Walden's motion, concluding that he failed to demonstrate a likelihood of success on the merits of his First Amendment claim or show irreparable harm in the absence of the requested injunction. On appeal, Walden argues that the district court erred in finding that the Naming Provisions are reasonable, nondiscriminatory regulations that impose no more than a minimal burden on his First Amendment rights. Walden argues the laws constitute an impermissible content-based restriction on core political speech. We conclude that the district court did not abuse its discretion in denying the motion for a preliminary injunction. Accordingly, we **AFFIRM** the judgment of the district court.

---

JOHN R. CUTI, Cuti Frisch PLLC, New York, NY, *for Plaintiff-Appellant*.

DANIEL S. MAGY, Assistant Solicitor General (Barbara D. Underwood, Solicitor General; Ester Murdukhayeva, Deputy Solicitor General, *on the brief*), *for* Letitia James, Attorney General, State of New York, New York, NY, *for State Board Defendants-Appellees*.

---

EUNICE C. LEE, *Circuit Judge*:

Plaintiff-Appellant Jim Walden appeals an interlocutory order entered in the United States District Court for the Eastern District of New York (DeArcy Hall, *J.*) denying his motion for a preliminary injunction.  Walden sought to enjoin officials of the New York State Board of Elections (the "State Board defendants"), as well as the New York City Board of Elections (the "City Board"), from prohibiting him from using the word "Independence" or "Independent" as a part of the name of an independent body through which Walden seeks to run as a prospective nominee for the 2025 New York City mayoral election.  *See* N.Y. Elec. Law §§ 2-124(2) and 6-138(3)(f) (collectively, the "Naming Provisions").  Walden contends that, as applied to him, the Naming Provisions violate his First Amendment rights to speech and association.

The district court denied Walden's motion, concluding that he failed to demonstrate a likelihood of success on the merits of his First Amendment claim or show irreparable harm in the absence of the requested injunction.  On appeal, Walden argues that the district court erred in finding that the Naming Provisions are reasonable, nondiscriminatory regulations that impose no more than a minimal burden on his First Amendment rights.  Walden argues the laws

3

constitute an impermissible content-based restriction on core political speech. We conclude that the district court did not abuse its discretion in denying the motion for a preliminary injunction. Accordingly, we **AFFIRM** the judgment of the district court.

## BACKGROUND

### I. Statutory Overview

Under New York State's election law, a prospective candidate for public office can obtain access to the general election ballot as the nominee of either a political party or an independent body. A political party is an organization whose candidates for Governor of New York and President of the United States, in their respective preceding elections, each received at least two percent of the total votes cast or 130,000 votes, whichever is greater. N.Y. Elec. Law § 1-104(3). The State of New York recognizes four political parties: Democratic, Republican, Conservative, and Working Families. Political parties are given automatic access to the ballot for national, statewide, and local elections, without the need to solicit and submit signatures from registered voters. *See id.* §§ 6-104, 6-110, 6-120. Political parties are also automatically listed on New York's voter registration form. *See* App'x at 105. On this form, voters are given the option to enroll as a member of a political party or register as an "independent voter." *Id.*

An independent body is defined as "any organization or group of voters which nominates a candidate or candidates for office to be voted for at an election, and which is not a [political] party." N.Y. Elec. Law § 1-104(12). Unlike a political party, an independent body is not given automatic access to the ballot at elections. Rather, to run as the nominee of an independent body, a prospective candidate must obtain a prescribed number of signatures from registered voters on an independent nominating petition, submit that petition to the local board of elections, and have the petition deemed valid by the local board of elections. *See id.* §§ 6-138, 6-142, 6-144, 6-158. Independent nominating petitions "for an office or position to be voted for wholly within the city of New York," such as mayor, must be filed with the City Board. *Id.* § 6-144. Any challenge to a local board of elections' validity determination regarding a nominating petition must be filed in the state supreme court in the relevant judicial district. *Id.* § 16-102(1).

As relevant to this appeal, New York's election law places certain restrictions on the naming of political parties and independent bodies. Section 2-124(2) prohibits prospective political parties from adopting a name that is "similar to or likely to create confusion with" the name of an existing party or independent body. *Id.* § 2-124(2). Since 1954, section 2-124(2) has also prohibited political

parties from using the words "American," "Empire State," "United States," "National," or "New York State" in their name. *Id*. In 2022, the New York State Legislature amended the provision to add the words "Independence" and "Independent" to the list of prohibited words. *See* 2022 N.Y. Sess. Laws ch. 671. The Legislature was ostensibly motivated to make this amendment to "remove a major source of voter confusion" after "evidence suggest[ed] that many voters who [were] registered as members of the" now-defunct Independence Party of New York, a political party that existed from 1991 to 2020, "d[id] not realize [that] they [were] registered in the Party," as "they intended to register as independent (i.e. unaffiliated) voters but were confused by the name of the Independence Party." N.Y. Sponsor Mem., 2021 S.B. S1851A.

While section 2-124(2) governs the names of political parties, section 6-138(3) governs the names of independent bodies. *See* N.Y. Elec. Law § 6-138(3). Section 6-138(3)(a) provides that prospective independent bodies are barred from adopting a name that includes the "name or part of the name," or "create[s] the possibility of confusion with the . . . name of a then existing political party" or the name that was previously selected by another independent body. *Id.* Although the provision does not set forth any restrictions on specific words, section 6-

138(3)(f) provides, in part, that the name of an independent body "shall also conform to the requirements of this chapter with respect to the names . . . permitted to be selected by a [political] party." *Id.* § 6-138(3)(f). As a result, though no court has ruled as such, the parties in this case agree that section 2-124(2)'s naming restrictions on political parties also extend to independent bodies. *See* Appellant's Br. at 8–9; Appellees' Br. at 7; *see also Healy-Case v. Garcia*, 152 N.Y.S.3d 265, 266 (Erie Sup. Ct. 2021) (assuming, without discussion, that section 6-138(3)(f) extends section 2-124's prohibitions to independent bodies).

A prospective candidate for an independent body can obtain petition signatures from any registered voter, whether enrolled in a political party or not. *See* N.Y. Elec. Law § 6-138(1). A candidate's nominating petition must state the name of the independent body circulating the petition. *Id.* § 6-140(1)(a). The nominating petition requires that every person who signs the petition attest: "I do hereby nominate the following named person . . . as a candidate . . . for election to public office . . . to be voted for at the election to be held on the ____ day of ____, 20__, and that I select the name _____ . . . as the name of the independent body making the nomination." *Id.* The name chosen for an independent body in a valid nominating petition becomes the name of the independent body that is printed on

7

the ballot. *See* App'x at 99; *see also* N.Y. Elec. Law § 7-104(7) ("The ballot shall have printed upon it in black ink . . . at the head of the column or the beginning of the row containing the names of candidates, the name of the party or independent body and the designating letter of the row or column.").

## II.     Factual and Procedural History

On October 24, 2024, Walden publicly announced that he was running to become the next mayor of New York City. Walden, who had not been enrolled in any political party since 2006, sought the nomination of an independent body that he and his supporters wished to name the "Independence Party." App'x at 7. Walden asserted that the name "Independence Party" expressed his and his supporters' "desire for political change and [to] associate together to form a viable alternative to the major political parties," i.e., the Democratic and Republican parties. *Id.* at 8.

On January 6, 2025, Walden filed a complaint against the State Board defendants and the City Board (collectively, the "Defendants"). In the complaint, Walden alleged that any enforcement of the Naming Provisions to prohibit him from using the words "Independent" or "Independence" in the name of his prospective independent body would violate his First Amendment rights to freedom of speech and association, as well as the Equal Protection Clause of the

Fourteenth Amendment by treating him and his supporters worse than the major political parties. On January 15, 2025, Walden moved for a preliminary injunction premised solely on his First Amendment claim. Specifically, Walden contended that the Naming Provisions constitute a "content-based restriction of core political speech [that] unjustifiably imposes a severe burden on [his] fundamental First Amendment rights." Pl.'s Mem. in Support of Mot. for Prelim. Inj. at 1, *Walden v. Kosinski*, 777 F. Supp. 3d 120 (E.D.N.Y. 2025) (No. 25-cv-72), Dkt. No. 15-1. He therefore sought to enjoin the Defendants from enforcing the Naming Provisions against him, and, more specifically, from rejecting his prospective nominating petition with the name "Independence Party" therein. *See id.* at 2.

On January 31, 2025, the State Board defendants opposed the motion for a preliminary injunction, arguing that Walden's claims against them were non-justiciable, given that Walden lacked standing to sue them because the City Board would be the body to determine the validity of his petition and that the State Board, moreover, had sovereign immunity. The State Board defendants also argued that Walden could not otherwise establish entitlement to his requested relief. That same day, counsel for the City Board sent a letter to the district court

9

stating that "[t]he Board is not taking a position in this litigation," and asked to "be excused from further participation in th[e] matter." App'x at 20.

At a hearing regarding Walden's motion, the State Board defendants asserted that while it is the State Board's position that the names of independent bodies must comply with section 2-124(2)'s naming restrictions for political parties, the State Board's interpretation about "the applicability of Section 2-124 . . . to 6-138 [regarding independent bodies] will not be enforced as against local Boards of Election, and also as against [] Mr. Walden's candidacy." *Id.* at 145. On March 17, 2025, in response to the district court's directive to explain its position on the enforcement of the Naming Provisions against Walden, the City Board filed a letter "restat[ing] that it takes no position with regard to the claims in this litigation – that is, the constitutionality of the [Naming Provisions]." *Id.* at 155. The City Board stated that it is a "ministerial agency" and "lacks the authority to take any position on the constitutionality of the law," while also acknowledging that it "appears to be a proper defendant here, insofar as it will be required to determine the overall validity of [Walden]'s [] independent nominating petition, should it be duly filed with the agency for review." *Id.* (emphases omitted). The City Board further explained that "[i]f the [Naming Provisions] remain[] in effect,

the City Board will be obligated to apply such law as written, consistent with the State's position on the law. If the law is repealed or otherwise rendered unenforceable, the City Board will not apply the [Naming Provisions] to any duly filed independent nominating petitions." *Id.*

On April 1, 2025, the district court issued a text order denying Walden's motion for a preliminary injunction and indicated that a memorandum and order would follow.[1] The district court filed its memorandum opinion and order on April 5, 2025. In it, the district court found that although "the State B[oard] does not make the determination about the approval or rejection of [Walden]'s independent nominating petition," because the State Board "possesses general enforcement powers under New York election law," it "has the authority to coerce the City B[oard] into enforcing the [Naming Provisions] against [Walden]." *Walden*, 777 F. Supp. 3d at 128–29. Therefore, the district court concluded that Walden had standing to sue the State Board defendants. *Id.* at 129.[2] However, the district court held that Walden was not entitled to a preliminary injunction because

---

[1] Walden filed his notice of appeal on the same day the district court issued its text order denying his motion for a preliminary injunction.

[2] The district court did not expressly address the State Board defendants' sovereign immunity defense. *See generally Walden*, 777 F. Supp. 3d 120.

11

he failed to establish a likelihood of success on the merits of his First Amendment claim. *See id.* at 129–36.

Applying the *Anderson-Burdick* framework generally applicable to First Amendment challenges to state election laws,[3] the district court determined that the Naming Provisions were not subject to review under strict scrutiny, but rather a more deferential standard, because the law neither imposed a severe burden on core political speech nor amounted to an unconstitutional content-based restriction on speech. *See id.* Specifically, the district court found that the Naming Provisions did not prevent Walden from spreading his "core political message" about "independence from the major parties" to his supporters and voters at large, nor did it "proscribe[] his ability to engage in petition circulating activity." *Id.* at 131–32. The district court further found that a nominating petition is a nonpublic forum and as such, the Naming Provisions only needed to be reasonable and viewpoint neutral to withstand constitutional scrutiny. *See id.* at 135–36.

Under the more deferential standard of review, the district court concluded that the Naming Provisions were reasonable because the State's articulated

---

[3] The *Anderson-Burdick* framework derives from the Supreme Court cases *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992). The application of this framework to cases such as the present one is addressed in further detail below.

interests in preventing voter confusion sufficiently justified the Naming Provisions' enforcement. *See id.* at 133–34. The district court also determined that because the prohibition against using the words "Independence" and "Independent" applied equally to political parties and independent bodies, the Naming Provisions were viewpoint neutral. *Id.* at 136. The district court ultimately held that Walden failed to show a likelihood of success on the merits of his claim that, as applied to him, the Naming Provisions violate the First Amendment—a determination that also prevented Walden from showing a likelihood of irreparable harm in the absence of his requested injunctive relief. *Id.*

Walden appealed.[4] Following oral argument, we issued an order on May 2, 2025, summarily affirming the district court's ruling and indicating that an opinion would follow. *Walden v. Kosinski*, No. 25-764 (2d Cir. May 2, 2025), Dkt. No. 44. We now write to explain our decision.

---

[4] The City Board elected not to participate in this appeal. Thus, the arguments considered here are those made by Walden and the State Board defendants. Accordingly, this opinion uses "Appellees' Brief" to refer to the brief submitted by the State Board defendants.

**DISCUSSION**

**I.    Standard of Review**

We review questions of Article III standing and sovereign immunity *de novo*.

*See Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 140 (2d Cir. 2021)

(standing); *Rogers v. Petroleo Brasileiro, S.A.*, 673 F.3d 131, 136 (2d Cir. 2012)

(sovereign immunity). "We review a district court's decision to deny a preliminary

injunction for abuse of discretion." *Libertarian Party of Conn. v. Lamont*, 977 F.3d

173, 176 (2d Cir. 2020). "A district court has abused its discretion if it has (1) based

its ruling on an erroneous view of the law, (2) made a clearly erroneous assessment

of the evidence, or (3) rendered a decision that cannot be located within the range

of permissible decisions." *Warren v. Pataki*, 823 F.3d 125, 137 (2d Cir. 2016) (quoting

*Lynch v. City of New York*, 589 F.3d 94, 99 (2d Cir. 2009)).

**II.    Applicability of Section 2-124(2) to Walden's Nominating Petition**

Before considering the merits of Walden's appeal, we first address a

threshold matter: whether the naming restrictions for *political parties* under section

2-124(2) apply to Walden, as a potential nominee of an *independent body*, such that

there is a basis for a constitutional challenge here. By its plain text, section 2-124(2),

as relevant here, prohibits only political parties, as opposed to independent bodies,

from using the word "Independence" in their name. *See* N.Y. Elec. Law § 2-124(2).

14

Despite this, both Walden and the State Board defendants assert that section 2-124(2)'s naming restrictions also apply to independent bodies pursuant to the second sentence of section 6-138(3)(f), which provides, in part, that the names of independent bodies shall "conform to the requirements of this chapter with respect to the names . . . permitted to be selected by a [political] party." *Id.* § 6-138(3)(f). Though the parties agree that section 2-124(2) applies to independent bodies, we must nevertheless assess whether they are correct before ruling on the provision's constitutionality; if section 2-124(2) does not apply to Walden's case as a statutory matter, then a potential finding of the law's unconstitutionality ought to be avoided. *See LaValle v. Hayden*, 98 N.Y.2d 155, 161 (2002) ("[C]ourts must avoid, if possible, interpreting a presumptively valid statute in a way that will needlessly render it unconstitutional."); *People v. Lo Cicero*, 14 N.Y.2d 374, 378 (1964) ("We are . . . obligated to construe [New York] statutes so as to avoid constitutional doubts.").

The district court accepted the parties' proposition that "by reference to Section 2-124(2), Section 6-138(3)(f) extends the naming prohibitions in Section 2-124(2) . . . to independent bodies." *Walden*, 777 F. Supp. 3d at 126. But the district court expressed "skepticism that Section 2-124(2)'s prohibition on the

use of certain words, including 'Independence,' applied wholesale to independent bodies." *Id.* at 126 n.2. That skepticism was rooted in the fact that while section 6-138(3)(f) provides, in part, that the names of independent bodies "shall also conform to the requirements of this chapter with respect to the names . . . permitted to be selected by a party," one possible reading of the provision would suggest it applies only to a particular subset of independent body nominating petitions, not all of them. N.Y. Elec. Law § 6-138(3)(f). On that reading, because there is language within section 6-138(3)(f) that cross references paragraphs (b) and (e) of the section—which pertain to the process for selecting a name when a prospective independent body has chosen a name that is taken by or too similar to that of another independent body with a candidate running for the same political office or in the U.S. Presidential race—the requirement in paragraph (f) of "conformity" with other naming requirements applies to nominating petitions only in the circumstances of paragraphs (b) and (e). *See id.* § 6-138(3)(b), (e), (f).

Section 6-138(3)(f), in pertinent part, reads as follows:

[I]f the [nominating] petition shall fail to select a name for such independent body, or if pursuant to the provisions of paragraph b or paragraph e of this subdivision, a candidate shall fail to select another . . . name for such independent body, the officer or board in whose office the petition is filed shall select a[] . . . name [for the independent body] . . . to distinguish the candidates nominated

> thereby.   The name . . . shown *upon such petition or selected by a candidate authorized to make such selection by paragraph b or paragraph e* of this subdivision, or selected by an officer or board *shall also conform to the requirements of this chapter* with respect to names . . . permitted to be selected by a party.

*Id.* § 6-138(3)(f) (emphases added).  If one were to read "such petition" in the second sentence of paragraph (f) to refer to only the petitions discussed in the first sentence of the paragraph, then section 6-138(3)(f) would mean that conformity to section 2-124(2)'s naming requirements is not demanded of all independent bodies, but only those that failed to select a name in the first instance or whose name must be changed as required under paragraphs (b) and (e)—circumstances not at issue in this appeal.

But as the parties' arguments demonstrate, that is not the only reasonable reading of the statute.  "Where the language is ambiguous or where a literal construction would lead to absurd or unreasonable consequences that are contrary to the purpose of the [statute's] enactment, courts may [r]esort to legislative history."  *Anonymous v. Molik*, 32 N.Y.3d 30, 37 (2018) (alterations in original) (internal quotation marks omitted).  That is because, "[w]hen presented with a question of statutory interpretation, a court's primary consideration is to ascertain and give effect to the intention of the Legislature."  *Lemma v. Nassau Cnty. Police*

17

*Officer Indemnification Bd.*, 31 N.Y.3d 523, 528 (2018) (internal quotation marks omitted). Accordingly, to determine whether section 2-124(2) applies to independent bodies, and to Walden specifically, we must do more than a formalistic analysis of the statute's language. Here, the parties argue that to understand the Legislature's intent with respect to section 2-124(2)'s applicability to independent bodies, section 6-138(3)'s legislative history must be considered. We agree with the parties that this history indicates that the Legislature intended for the naming restrictions to apply to all independent bodies, regardless of how their names were selected.

The originally-enacted version of section 6-138(3) was a subdivision without enumerated paragraphs that generally described the same prohibitions as the current version; it prohibited independent bodies from selecting names that could lead to confusion. *See* 1976 N.Y. Laws, ch. 233, § l. Notably, the subdivision ended with near identical language as the current version requiring the selected name to "conform to the requirements of this chapter with respect to names . . . permitted to be selected by a [political] party." *Id.* When viewed in its entirety,[5] the most

---

[5] The original version of section 6-138(3) provided, in pertinent part:

> The name selected for the independent body making the nomination shall be in English characters and shall not include the name or part of the name

natural reading of the first, undivided iteration of section 6-138(3) is that the names

of independent bodies must conform with section 2-124's naming requirements,

regardless of whether the name was first chosen in the independent nominating

petition or selected through other means. *See id.* Indeed, it appears that this was

the accepted interpretation of § 6-138(3). *See* App'x at 40–44 (two formal opinions

issued by the State Board in 1978 and 1980 interpreting section 6-138(3) to require

independent bodies to comply with the naming restrictions for parties enumerated

in section 2-124(2)).

It was only after the Legislature amended section 6-138(3) in 1992 that the

subdivision was split into paragraphs and the conformity language was modified

and moved to the second sentence of the new paragraph (f). *See* 1992 N.Y. Laws,

ch. 79, § 16, ch. 305, § 1. Nothing about the 1992 amendments to section 6-138(3)

suggests that rather than requiring all independent bodies to comply with

---

or an abbreviation of the name or part of the name, nor shall
the . . . name . . . create the possibility of confusion with the . . . name of a
then existing party, or a previously filed independent nominating petition.
If such a petition . . . shall fail to select a name for such independent body,
the officer or board in whose office the petition is filed shall select a[] . . .
name . . . to distinguish the candidates nominated thereby. The name . . .
shown upon such petition or selected by an officer or board shall also
conform to the requirements of this chapter with respect to names . . .
permitted to be selected by a party.

section 2-124(2)'s naming requirements, the Legislature intended to limit such compliance only to the circumstances set forth in paragraphs (b) and (e) of the provision's current iteration, where an independent body entirely fails to select a name or the name must be changed. In fact, it would be odd for the Legislature to have intended for the amendment to require some independent bodies to adhere to the naming restrictions but not others, for no expressed or otherwise obvious purpose. For those reasons, we conclude that as a matter of New York law, section 2-124(2)'s naming restrictions apply to independent bodies. Accordingly, Walden, as the would-be candidate of an independent body, can bring this as-applied challenge to the Naming Provisions.

## III. Justiciability

The State Board defendants first argue that Walden's First Amendment claim, as raised against them, is not justiciable. Specifically, the State Board defendants argue that (1) Walden lacks Article III standing to sue them, and (2) as members of the State Board sued in their official capacities, they are protected by sovereign immunity. We address each argument in turn.

### A. Standing

To satisfy Article III's standing requirement, Walden must show: (1) an injury-in-fact, (2) that is "fairly traceable" to the State Board defendants' alleged

actions, and (3) "a non-speculative likelihood that the injury can be remedied by the requested relief." *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 70 (2d Cir. 2019) (internal quotation marks omitted). "In pre-enforcement challenges," such as the present action, "the second and third requirements for standing— causation and redressability—are 'often flip sides of the same coin.'" *Bochner v. City of New York*, 118 F.4th 505, 518 (2d Cir. 2024) (quoting *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024)). "As the Supreme Court has explained, the future injury asserted in a pre-enforcement challenge to a particular law must be 'the result of a statute's actual or threatened enforcement.'" *Id.* (alteration and emphasis omitted) (quoting *California v. Texas*, 593 U.S. 659, 670 (2021)).

Before the district court, Walden described his injury as the "anticipated rejection of his nominating petitions," which he claimed prevented him from "effectively organizing and conducting a petitioning campaign to gain access to the ballot." Pl.'s Mem. in Support of Mot. for Prelim. Inj. at 2. On appeal, the State Board defendants do not challenge that this asserted injury satisfies the injury-in-fact requirement. Rather, they argue that Walden's injury cannot be fairly traced to them because it is the City Board, and not the State Board, that would determine

21

the validity of Walden's nominating petition, and thus any threat of enforcement of the Naming Provisions against Walden stems from the City Board. The State Board defendants further contend that an injunction against them would not redress Walden's asserted injury, as such an injunction "would not bind the City Board, nor would it ensure that the City Board take any particular action with respect to Walden's nominating petition." Appellees' Br. at 19. The State Board defendants argue that given their expressed disavowal of any intent to enforce the Naming Provisions against the City Board or Walden, the State Board's general enforcement powers under New York election law are insufficient to establish Walden's standing. We find these arguments unpersuasive.

The State Board defendants' attempt to shift the focus onto the City Board's involvement in this case ignores that, in order to satisfy the traceability element of standing, a plaintiff need not show that the "defendant's actions are the very last step in the chain of causation." *Bennett v. Spear*, 520 U.S 154, 169 (1997). Rather, a plaintiff can establish causation by showing "injury produced by determinative or coercive effect upon the action of someone else." *Id.* And "[w]hen third party behavior is predictable, commonsense inferences may be drawn." *Diamond Alt. Energy, LLC v. Env't Prot. Agency*, 145 S. Ct. 2121, 2136 (2025). The district court

concluded that the State Board, through its general enforcement powers under New York election law, has the authority to coerce the City Board into enforcing the Naming Provisions, and consequently, the State Board has the requisite determinative or coercive effect over the City Board's decision to accept or reject Walden's nominating petition. The district court did not err in reaching this conclusion.

Under New York's statutory scheme, the State Board has "jurisdiction of, and is responsible for, the execution and enforcement of statutes governing campaigns, elections and related procedures." *Schulz v. Williams*, 44 F.3d 48, 61 n.13 (2d Cir. 1994) (alterations adopted and internal quotation marks omitted). Specifically, the State Board has "the power and duty to . . . issue instructions and promulgate rules and regulations relating to the administration of the election process [and] election campaign practices . . . consistent with the provisions of law." N.Y. Elec. Law § 3-102(1). In 1978 and again in 1980, the State Board invoked its statutory powers to issue two opinions interpreting section 2-124(2) and section 6-138(3). In pertinent part, the State Board took the following position on the law: "An independent body, in selecting a name . . . , *must* comply with both [sections 2-124(2) and 6-138(3)] of the Election Law." App'x at 40 (emphasis added).

We are persuaded that the State Board's prior publicized views about the applicability of section 2-124(2)'s naming prohibitions to independent bodies would have a determinative or coercive effect upon the actions of local boards of elections today, including the City Board. While there is no dispute that the City Board is responsible for determining the validity of any nominating petition submitted before it for review, both Walden and the City Board agree that the City Board is merely a "ministerial agency," and as such, it "lacks the authority to take any position on the constitutionality of the law." *Id.* at 155 (emphasis omitted). Accordingly, the City Board has represented that it is "obligated to apply [the] law as written, consistent with the *State's position on the law*." *Id.* (emphasis added). Given the City Board's representations, there can be little doubt that if the City Board were to reject Walden's nominating petition for failure to comply with the Naming Provisions, such action would be rooted in the City Board's application of the provisions, as "consistent with the State [Board]'s position on the law," *id.*, and the determinative or coercive effect thereof.

Further, the State Board's expressed interest in how the Naming Provisions are interpreted and enforced—evident by the State Board's continued interest in litigating this action despite contending that the City Board is the only proper

24

defendant[6]—underscores to us that though the State Board defendants have disavowed an intent to enforce the Naming Provisions against Walden, the enforcement of the law by the City Board, acting upon the stated views of the State Board, remains a real and non-speculative threat. *Cf. Bochner*, 118 F.4th at 525–26 (concluding that the appellants lacked standing to sue New York City to enjoin enforcement of a local law when the City had "unqualifiedly disavowed any intent to enforce the [challenged law] against the" appellants, *and* the appellants failed to adduce any evidence showing the City's likely enforcement of the challenged provisions against them). As such, Walden's asserted injury is fairly traceable to the State Board defendants.

A preliminary injunction against the State Board defendants would also redress Walden's injury by undoubtedly swaying the City Board to not enforce a law that a court, by issuing the injunction, determined likely violates the

---

[6] Indeed, the State Board defendants argue that even if we were to find that Walden's claims against them are non-justiciable, we should treat their arguments regarding the merits of Walden's constitutional challenge as arguments raised by the New York State Attorney General acting as an "intervenor pursuant to 28 U.S.C. § 2403(b)." Appellees' Br. at 3 n.2. That is because, unlike the City Board, the State Board defendants seek to "defend the constitutionality of the law." *Id.* This ongoing defense of the provisions further supports Walden's standing. *See Diamond Alt. Energy, LLC,* 145 S. Ct. at 2137 ("[I]f invalidating the regulations would change nothing . . . , why are [Respondents] enforcing and defending the regulations?").

Constitution. Further, as stated earlier, if such an injunction were issued, the State Board would have the power to issue instructions to local boards of elections, including the City Board, regarding the law's enforcement. *See* N.Y. Elec. Law § 3-102(1). For these reasons, we conclude that Walden has standing to sue the State Board defendants.

### B. Sovereign Immunity

The State Board defendants further argue that even if Walden has standing to sue them, his claims are nevertheless barred by sovereign immunity. It is well-settled that "[a]n action against a state official in his official capacity is deemed an action against the state itself . . . which possesses sovereign immunity under the Eleventh Amendment." *Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 122 (2d Cir. 2020) (internal citation omitted), *abrogated on other grounds, N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court recognized a "limited exception" to state defendants' Eleventh Amendment immunity. *CSX Transp., Inc. v. N.Y. State Off. of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002). The *Ex parte Young* exception to sovereign immunity applies against officials "who threaten and are about to commence proceedings . . . to enforce against parties affected an unconstitutional act, violating the Federal

Constitution."  *Ex parte Young*, 209 U.S. at 156.  For *Ex parte Young* to be invoked against a state defendant, that defendant "'must have some connection with the enforcement of the act' that is in continued violation of federal law."  *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372–73 (2d Cir. 2005) (quoting *Ex parte Young*, 209 U.S. at 154).

The State Board defendants argue that Walden cannot satisfy *Ex parte Young* because they "have disclaimed an intent to enforce the challenged naming provisions against Walden," and therefore, it cannot be said that the State Board defendants have threatened or are about to commence proceedings to enforce the law against him.  Appellees' Br. at 22.  But as noted above, the State Board defendants' continued interest in defending the constitutionality of the Naming Provisions undermines their claim of an unwillingness to enforce the law against Walden.  In fact, the State Board defendants' disavowal of any intent to enforce the Naming Provisions against Walden is solely based on their oral representations made in court, which do not carry the force of law.[7]  Moreover, as the State Board

---

[7] The State Board defendants did, however, acknowledge at oral argument that, if they were to renege on their promise not to enforce the Naming Provisions against Walden, they might be judicially estopped from doing so.  *See* Oral Arg. at 40:55–42:05.  The doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another

defendants concede, a threat of the law's enforcement also stems from the City Board, and the City Board has stated that if the law remains in effect, it is "obligated to apply [the] law as written, consistent with the State's position on the law." App'x at 155. As explained above, the State Board's stated position—that the law mandates an independent body's compliance with section 2-124(2)'s naming restrictions—and its general powers to enforce that stated position gives the State Board the "requisite 'special relation' to the contested provision[s] to render them proper defendants" for the purposes of *Ex parte Young*. *Schulz*, 44 F.3d at 61 n.13 (quoting *Ex parte Young*, 209 U.S. at 157). Accordingly, we conclude that the State Board defendants are not entitled to sovereign immunity.

## IV.   Merits of the Motion for a Preliminary Injunction

We now turn to the merits of Walden's motion for a preliminary injunction. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139–40 (2d Cir. 2007) (per curiam) (alteration in original and emphasis omitted) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). "To obtain a preliminary injunction against

---

phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal quotation marks omitted).

government enforcement of a statute, [Walden] must establish (1) that [he] is likely to succeed on the merits, (2) that [he] is likely to suffer irreparable harm if the injunction is not granted, (3) that the balance of the equities tips in [his] favor, and (4) that the injunction serves the public interest." *SAM Party of N.Y. v. Kosinski*, 987 F.3d 267, 273–74 (2d Cir. 2021). "When, as here, the moving party seeks a preliminary injunction that will affect government action taken in the public interest pursuant to a statutory or regulatory scheme," the party must demonstrate "a clear or substantial likelihood of success on the merits." *Sussman*, 488 F.3d at 140 (alteration adopted and internal quotation marks omitted).

### A. Likelihood of Success on the Merits of First Amendment Claim

Walden argues that, as applied to him, the Naming Provisions unconstitutionally restrict his First Amendment rights of speech and association. The First Amendment, made applicable to the States through the Fourteenth Amendment, "has its fullest and most urgent application to speech uttered during a campaign for political office," *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 223 (1989) (internal quotation marks omitted), and "protects the right of citizens to associate and to form political parties for the advancement of common political goals and ideas," *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 357 (1997). But because the Constitution affords States broad power to regulate the

"Times, Places and Manner of holding Elections," Art. I, § 4, cl. 1, "States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder," *Timmons*, 520 U.S. at 358.

Because "[a]ll election laws impose at least some burden on the expressive and associational rights protected by the First Amendment," *Maslow v. Bd. of Elections in N.Y.C.*, 658 F.3d 291, 296 (2d Cir. 2011), the Supreme Court has recognized that the distinction between legitimate and impermissible election regulations ordinarily does not lend itself to a bright line or "litmus-paper test," *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983) (internal quotation marks omitted). Rather, drawing such a distinction requires a particularized assessment of the "character and magnitude of the asserted injury to the rights protected by" the First Amendment and the "extent to which [the] challenged regulation burdens" said rights. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (internal quotation marks omitted). To that end, courts have generally evaluated challenges to state election laws using the *Anderson-Burdick* sliding-scale balancing test, derived from those two seminal Supreme Court cases. *See SAM Party*, 987 F.3d at 274.

Under that test, "the rigorousness of [a court's] inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation

30

burdens First and Fourteenth Amendment rights." *Burdick*, 504 U.S. at 434. "[I]f the restrictions on those rights are severe, then strict scrutiny applies. But when a state election law provision imposes only reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of voters, the State's important regulatory interests are generally sufficient to justify the restrictions." *SAM Party*, 987 F.3d at 274 (internal quotation marks and citations omitted). Thus, "the court must . . . weigh the burdens imposed on the plaintiff against the precise interests put forward by the State, and the court must take into consideration the extent to which those interests make it necessary to burden the plaintiffs' rights. Review under this balancing test is quite deferential, and no elaborate, empirical verification is required." *Id.* (internal quotation marks and citations omitted).

Despite the general applicability of the *Anderson-Burdick* test to cases challenging the constitutionality of state election laws, Walden contends that the district court erred in applying the test in this case and concluding that, under the test, the Naming Provisions are reasonable restrictions on his First Amendment rights. Walden argues that the district court should have subjected the Naming Provisions to review for strict scrutiny, as they are content-based restrictions on core political speech that impose a severe burden on his rights, a burden that

31

cannot be justified by the State's asserted interests in the laws. In response, the

State Board defendants assert that there is no merit to Walden's challenge to the

applicability of the *Anderson-Burdick* test here; and further, the district court

correctly applied the test and determined that the Naming Provisions impose

reasonable limitations on Walden's rights that are justified by the State's interest

in preventing voter confusion.

For the reasons that follow, we agree with the district court's determination

that Walden is unlikely to succeed on the merits of his constitutional challenge

because (1) the Naming Provisions do not impose a severe burden on his First

Amendment rights to speech and association, and (2) the laws' restrictions on

Walden's rights are reasonable and justified by the State's articulated interests.

### 1. Determining the Severity of the Burden

In determining the severity of the burden that the challenged laws place on

Walden's speech and associational rights, we first address Walden's contention

that the *Anderson-Burdick* balancing test cannot be applied in this case. Specifically,

Walden contends that the *Anderson-Burdick* test "applies only to laws that regulate

the 'mechanics of the electoral process.'" Appellant's Br. at 20 (quoting *McIntyre*

*v. Ohio Elections Comm'n*, 514 U.S. 334, 345 (1995)). But Walden asserts that, as

relevant to nominating petitions, the Naming Provisions do not regulate the

mechanics of the electoral process because rather than regulating the time, place, or manner of an election, the laws regulate political expression that occurs months before the election—specifically, he asserts that they regulate what his petition circulators can communicate to potential voters. Thus, Walden argues that the laws impermissibly restrict protected speech rather than simply regulating the electoral process.

Walden's contention ignores the fact that, at its core, the nominating petition that he and his circulators would try to persuade voters to sign is the *mechanism* through which individuals, like Walden, who seek to run as the nominee of an independent body, obtain access to the ballot. *See* N.Y. Elec. Law § 6-138(1). In other words, the nominating petition itself is a tool for access to the ballot. *See cf. McIntyre*, 514 U.S. at 344 (listing "ballot access" provisions as the type of electoral laws that may be subject to the *Anderson-Burdick* test (citing *Storer v. Brown*, 415 U.S. 724 (1974))).

Moreover, the crux of Walden's constitutional challenge centers around his ability to name his independent body the "Independence Party," and it is undisputed that the name selected for the independent body in the nominating petition becomes the label used to identify the independent body's candidate on

the ballot. As the Third Circuit has aptly described it, a law that "regulates the words that may appear on the ballot" is "the archetypical mechanic of the electoral process for which the *Anderson-Burdick* test is designed." *Mazo v. N.J. Sec'y of State*, 54 F.4th 124, 144 (3d Cir. 2022). Thus, Walden is wrong to assert that the Naming Provisions do not regulate a mechanism of the electoral process, and accordingly, they are subject to the *Anderson-Burdick* balancing test.

Nevertheless, Walden contends that, even under the *Anderson-Burdick* test, the district court erred in concluding that the Naming Provisions do not impose a severe burden on his First Amendment rights because, as he argues, the provisions restrict core political speech and should therefore be subject to strict scrutiny. We have recognized that laws directly regulating core political speech may warrant bypassing the *Anderson-Burdick* test, as they are "*per se* severe." *See SAM Party*, 987 F.3d at 275 n.3; *see also Lerman v. Bd. of Elections in N.Y.C.*, 232 F.3d 135, 146 (2d Cir. 2000) ("[R]estrictions on core political speech so plainly impose a severe burden that application of strict scrutiny . . . will be necessary.") (internal quotation marks omitted). However, we reject Walden's claim that the Naming Provisions restrict core political speech, or constitute an impermissible content-based restriction, such that the laws must necessarily be subject to strict scrutiny.

34

## a. No Restriction on Core Political Speech

As noted earlier, Walden describes his core political message as being one about independence from the major political parties. Walden argues that he would "engage in core political speech when he sends circulators into the field to interact with voters to persuade them to sign a petition, which requires the signer to state that [the signer] nominates Walden for election to office *and* that [the signer] selects the name of the independent body that will make that nomination"; and here, but for the Naming Provisions, that name would be the "Independence Party," a name that Walden asserts reflects his core political message. Appellant's Br. at 18. Walden argues that the Naming Provisions impermissibly restrict core political speech, as was the case in *Meyer v. Grant*, 486 U.S. 414 (1988), *Buckley v. American Constitutional Law Foundation*, 525 U.S. 182 (1999), and *Lerman*, 232 F.3d 135, three cases in which state election laws restricting the ability to circulate petitions were subject to strict scrutiny and stricken down as violative of the Constitution. *See Meyer*, 486 U.S. at 415–16, 421–22 (challenging a law prohibiting paying circulators of initiative or referendum petitions); *Buckley*, 525 U.S. at 186, 198–99 (challenging a law requiring petition circulators to wear identification badges); *Lerman*, 232 F.3d at 138–39, 147 (challenging a law requiring witnesses for designating petitions to

35

be residents of the political subdivision in which the candidate was running for office).

Although this Court and the Supreme Court have recognized that "the circulation of a petition involves the type of interactive communication concerning political change that is appropriately described as 'core political speech,'" *Meyer*, 486 U.S. at 421–22, the circumstances here are distinct from those of the three cases upon which Walden relies. The regulations at issue in *Meyer*, *Buckley*, and *Lerman* imposed a severe burden on core political speech, and thus were subject to strict scrutiny, because they "dramatically reduced the number of potential petition circulators available to advance [the plaintiff's] political message," *Lerman*, 232 F.3d at 147, "ma[de] it less likely that [the plaintiffs] w[ould] garner the number of [necessary] signatures," *Meyer*, 486 U.S. at 423, and "discourage[d] participation in the petition circulation process," *Buckley*, 525 U.S. at 200. But, as the district court noted, the Naming Provisions, unlike the laws in *Meyer*, *Buckley* and *Lerman*, do not "proscribe[] [Walden's] ability to engage in petition circulation activity[,]" place "any restriction on who can sign his petition [or] who can help him circulate his petition," or "impede his ability . . . to interact and communicate with his supporters." *Walden*, 777 F. Supp. 3d at 132–33.

Walden concedes this point but nevertheless argues that the Naming Provisions "impose[] a far more direct restriction on his petitioning efforts by explicitly limiting what his circulators can ask signatories to do," i.e., choose "Independence Party" as the name of the independent body that will nominate him for the 2025 New York City mayoral election. Appellant's Reply Br. at 10 (emphasis omitted). In other words, Walden's argument is not that the Naming Provisions restrict his ability to circulate his nominating petition, but rather that they restrict his ability to circulate a nominating petition with a *particular name* selected for his independent body, a name that will ultimately be used to identify Walden *on the election ballot*.

However, the notion that a candidate has free rein over how he may be identified on the ballot, or even that he may use the ballot to convey a particular message, is foreclosed by the Supreme Court's decision in *Timmons*. In that case, the Supreme Court held that Minnesota's ban on fusion voting—a practice that allows a candidate to appear on the ballot as the nominee of more than one party— did not severely burden a political party's First Amendment associational rights. 520 U.S at 354, 359. There, the Court rejected the party's argument that it "ha[d] a right to use the ballot itself to send a particularized message," stating that

"[b]allots serve primarily to elect candidates, not as forums for political expression." *Id.* at 363. Evaluating the anti-fusion law under the *Anderson-Burdick* framework, the Court found that while the law "prevent[ed the party] from using the ballot to communicate to the public that it supports a particular candidate who is already another party's candidate," it did not place a severe burden on the party's rights. *Id.* at 362. That was because the law did not "restrict the ability of the [party] and its members to endorse, support, or vote for anyone they like"; the law did not "directly limit the party's access to the ballot"; it was "silent on parties' internal structure, governance, and policymaking"; and the party retained "great latitude in its ability to communicate ideas to voters and candidates through its participation in the campaign." *Id.* at 363. Therefore, the Court concluded that the burdens the law "impose[d] on the party's First and Fourteenth Amendment associational rights—though not trivial—[were] not severe" and were "justified by 'correspondingly weighty' valid state interests in ballot integrity and political stability." *Id.* at 363, 369–70.

*Timmons* compels us to conclude that the Naming Provisions' prohibition on Walden's ability to use the specific word "Independence" to identify his prospective independent body in the nominating petition, and subsequently on

the ballot, does not impose a severe burden on his First Amendment rights of speech and association. Walden is not entitled to use the ballot to send a particular message, *id.* at 363, and since the chosen name for the independent body on the nominating petition is required to be used on the ballot, *see* App'x at 99, Walden does not have greater naming rights with regard to the petition than he does with the ballot—the two are inextricably intertwined. Moreover, as in *Timmons*, Walden cannot legitimately argue that the Naming Provisions restrict his ability to participate in the electoral process, his or his supporters' ability to communicate their core political message to voters, or an individual's ability to support and vote for him.[8] Indeed, it cannot be said that during the petition circulation process, the Naming Provisions restrain Walden's ability to publicly communicate his message of independence from the major political parties to potential voters through various means of communication, including through his political platform, the media, and in-person communication by campaign workers soliciting signatures.

In sum, Walden remains free to communicate his message of independence to voters, irrespective of the name that he desires to call his independent body and

---

[8] Walden also does not contend that the Naming Provisions limit his access to the ballot or impose a burden on his organization's internal structure, governance, or policymaking. *See Timmons*, 520 U.S. at 363.

subsequently have placed on the ballot. For those reasons, we find that the Naming Provisions do not restrict core political speech, and as was the case in *Timmons*, the laws' burden on Walden's First Amendment rights—though not trivial—is not severe. *See Timmons*, 520 U.S. at 363*; see also Chamness v. Bowen*, 722 F.3d 1110, 1116, 1118 (9th Cir. 2013) (concluding that, pursuant to *Timmons*, a state regulation prohibiting a candidate from using the ballot label "Independent," and requiring him to either state he had "No Party Preference" or leave the space blank imposed "only a slight burden on speech"); *Marcellus v. Va State Bd. of Elections*, 849 F.3d 169, 172, 176, 178 (4th Cir. 2017) (finding, under *Timmons* and *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442 (2008), that a Virginia law allowing federal, state, and general assembly candidates to have party identifiers placed with their names on the ballot, but not local candidates, "at most minimally burdened" the plaintiffs' associational rights); *Mazo*, 54 F.4th at 131–33 (upholding a law that restricts candidates from including in their ballot slogans the name of any person or incorporated association without permission).

### b. No Impermissible Content-Based Restriction

We additionally reject Walden's alternative argument that "[s]trict scrutiny also applies because the [Naming Provisions are] facially content-based restriction[s]" targeting a particular message—independence from the major

political parties—and are therefore "'presumptively unconstitutional.'" Appellant's Br. at 26 (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)).[9] Because the Supreme Court has held that content-based restrictions in a non-public forum are permissible so long as the restrictions are reasonable and viewpoint-neutral, *see Cornelius v. NAACP Legal Def & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985), as the district court noted, Walden's argument "is only tenable if the nominating petition is deemed to be a public forum," *Walden*, 777 F. Supp. 3d at 136.

Like the district court, we find that if "the State controls the content of the ballot, which [the Supreme Court] ha[s] never considered a public forum," *Wash. State Grange*, 552 U.S. at 461 (Roberts, C.J., concurring), then "neither is the nominating petition that serves as [a] vehicle for obtaining access to the ballot," *Walden*, 777 F. Supp. 3d at 136. Put differently, the nominating petition, like the ballot, is a state-controlled document, and as we explained earlier, its purpose is

---

[9] As support for his argument that the Naming Provisions constitute impermissible content-based restrictions on political speech, Walden cites *Bachrach v. Secretary of Commonwealth*, 382 Mass. 268 (1981), a case that struck down a Massachusetts statute that prohibited the word "Independent" from being a part of a candidate's political designation and required the use of the word "Unenrolled" to define a candidate on the ballot if the candidate failed to make a political designation. But Walden's reliance on *Bachrach* is unavailing. Not only is the decision a non-binding, state court opinion, but it also predates *Timmons* and other relevant Supreme Court and Second Circuit caselaw.

to provide prospective independent nominees, like Walden, access to the ballot.

Outside of its limited purpose of providing access to the ballot in advance of an

election, it cannot be reasonably said that New York State, in creating a nominating

petition, *intended* for it to be "use[d] by the public at large for assembly and

speech." *Cornelius*, 473 U.S. at 802; *see also Minn. Voters All. v. Mansky*, 585 U.S. 1,

12 (2018) (holding that a polling place "qualifies as a nonpublic forum" because

"[i]t is, at least on Election Day, government-controlled property set aside for the

sole purpose of voting"). Thus, Walden's argument that, as applied to his

independent nominating petition, the Naming Provisions are presumptively

unconstitutional is unavailing when, like a ballot, a nominating petition does not

constitute a public forum.

*          *          *

Accordingly, Walden's contention that the Naming Provisions must be

subject to strict scrutiny, as content-based regulations restricting core political

speech that severely burden his First Amendment rights, is without merit. And as

noted earlier, under the *Anderson-Burdick* balancing test, where a challenged law

does not impose a severe burden on First Amendment rights, "a State's important

regulatory interests will usually be enough to justify reasonable,

nondiscriminatory restrictions." *Timmons*, 520 U.S. at 358 (internal quotation marks omitted). As the district court concluded, the Naming Provisions are non-discriminatory and viewpoint neutral since they apply equally to all political parties and independent bodies. *See Walden*, 777 F. Supp. 3d at 136. And for the following reasons, we further find that the provisions are reasonable and justified by the State's articulated interests.

## 2. Weighing the State's Interests in the Challenged Laws

The State Board defendants have maintained that the Naming Provisions are justified by "New York's interest in preventing voter confusion" on registration forms and on the ballot. Appellees' Br. at 36. Specifically, they assert that the laws' prohibition against the use of the words "Independence" and "Independent" in the names of political organizations was enacted "out of concerns that unaffiliated voters (i) were or would mistakenly enroll in the (now-defunct) Independence Party [of New York] when they intended to be unaffiliated, or (ii) nominate or vote for an Independence Party candidate mistakenly believing that the candidate was the representative of all unaffiliated voters." *Id.* at 37.

Undoubtedly, preventing voter confusion is a compelling state interest. *See Burson v. Freeman*, 504 U.S. 191, 199 (1992) (plurality opinion) ("[A] State has a compelling interest in protecting voters from confusion and undue influence.").

Walden concedes as much but asserts that the Naming Provisions are unreasonable as applied to him. Walden argues that allowing his organization to be named the "Independence Party" would impose no real risk of confusion because his organization, as an independent body, will never appear on the voter registration form. Walden attests that his organization will never seek to become a political party by nominating a candidate for governor or President; thus, because New York's voter registration form only lists political parties and not independent bodies, *see* App'x at 105, Walden argues that the desired name of his organization would not create confusion for those registering to vote because it would never appear on the registration form. *See* N.Y. Elec. Law § 1-104(3) (defining a political party). But Walden's argument is merely speculative and does little to undermine the reports of unaffiliated voters being confused by the name "Independence Party" or the Legislature's belief that the Naming Provisions would reduce voter confusion. *See* N.Y. Sponsor Mem., 2021 S.B. S1851A. The Legislature's findings—irrespective of any disagreement Walden may have with their merits—set forth the kind of "coherent account" that, under the *Anderson-Burdick* test, sufficiently explains why a challenged law, one that does not severely

burden First Amendment rights, is supported by the asserted state interest. *See*

*SAM Party*, 987 F.3d at 278.

We are also persuaded that unaffiliated voters' confusion about the name

"Independence Party" easily dovetails from the voter registration form to the

ballot. The State Board defendants have represented, and Walden does not

dispute, that, "[i]n common parlance, New York voters who are not affiliated with

an existing political party are referred to as 'independents' or 'independent

voters.'" Appellees' Br. at 8. As the State has put forth, in light of the direct reports

that independent voters were confused by the name "Independence Party," there

are reasonable concerns that permitting a single party or independent body to

identify itself as the "Independence Party" or the "Independent Party" on the

ballot could lead unaffiliated voters to mistakenly believe that this designation was

intended to represent all unaffiliated/independent voters, rather than identifying

a specific political organization.[10] Thus, as the State Board defendants argue, the

---

[10] Also unavailing is Walden's argument that the Naming Provisions are "woefully underinclusive" because they do not prohibit the use of words or phrases like "Nonpartisan," "Unaffiliated," or "No Party," which could also be used to communicate the message of independence from the major political parties. Appellant's Br. at 31. We are unpersuaded by this argument when it is undisputed that the phrases "independents" or "independent voters," and not any others, are commonly used in reference to New York voters who are not affiliated with an existing political party. *See* Appellees' Br. at 8. Therefore, the laws' prohibition on the use of the words

challenged laws seek to prevent voters from being misled into thinking that one singular organization—simply by virtue of taking the mantle of "independent" or "independence" in its name—represents all voters who do not wish to be affiliated with the established parties.[11]  Again, this "coherent account" of how the Naming Provisions aid in preventing voter confusion sufficiently justifies the laws and the burden they may impose on Walden.  *See SAM Party*, 987 F.3d at 278.  For those reasons, we conclude that Walden is unlikely to succeed on the merits of his claim that the Naming Provisions violate his First Amendment rights.

### B.      Remaining Requirements for Preliminary Injunction

Walden is also unable to satisfy the remaining requirements for a preliminary injunction.  Walden argues that in the absence of an injunction, the City Board would reject his anticipated nominating petition if it used "Independence Party" as the name of the independent body, thus harming his right to speech and ability to deliver his political message to potential supporters.

---

"Independence" and "Independent" is aptly connected to the particular concerns of voter confusion amongst independent voters.

[11] Indeed, all groups seeking access to the ballot for a candidate not nominated by a party are generically classified as "independent bodies."  To allow any one such body to co-opt the term applicable to all non-party candidates on the ballot would foster confusion about the status of other independent bodies that could not use the term if Walden were permitted to adopt it.

We have recognized that "where a First Amendment right has been violated, the irreparable harm requirement for the issuance of a preliminary injunction has been satisfied." *Green Party of N.Y. State v. N.Y. State Bd. of Elections*, 389 F.3d 411, 418 (2d Cir. 2004). Because, for the reasons stated above, Walden fails to demonstrate a likelihood of success on the merits of his claim that the Naming Provisions violate his First Amendment rights, he cannot establish irreparable harm by this route. *See SAM Party*, 987 F.3d at 278. And Walden makes no other argument in support of a finding of irreparable injury.

Finally, with respect to the factors of the public interest and the balance of the equities, "[i]n a suit against the government, balancing of the equities merges into [the Court's] consideration of the public interest." *Id.* Here, those factors also weigh against granting Walden's requested injunctive relief. Although "securing First Amendment rights is in the public interest," *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013), the State has a compelling interest in preventing voter confusion. That interest—supported by evidence of voters being confused by the word "independence" in party names—outweighs Walden's interest in using one specific word, "Independence," as a part of the name of his independent body in his nominating petition.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.